MEYER BROTHERS DRUG COMPANY, Appellant, v. BYBEE et al.

Division Two, February 1, 1904.

1. **Quashing Execution**: INTRODUCTION IN EVIDENCE: WAIVER. A pleading in response to a motion to quash an execution, admitting that the execution was issued and levied, waives the necessity of introducing the execution in evidence, although such pleading is unnecessary.

2. ——: HOMESTEAD: SHOWING FILING OF DEED: ADMISSION: WAIVER. To a question asked the defendant in the execution as to how he acquired the land, it was objected 'that the question was immaterial, on the ground that "it stands admitted that he acquired the land prior to the time that this debt accrued." Held, that this admission waived the necessity of showing when the deed to the homestead was filed for record. Held, also, that it will not be presumed that the plaintiff in the execution was intending to make a useless admission, and unless this admission be held to mean that defendant acquired the land by a deed which was duly filed before the debt was created, then it amounts to nothing.

3. ——: ——: ——: ——: ——: THEORY OF TRIAL. Where it is apparent from the entire record that the appellant did not try the motion to quash the levy of an execution, on the theory that defendant's deed was not filed in time to entitle him to claim the land levied on as a homestead, but on the theory that he had abandoned 'the homestead and was estopped by his conduct to claim the homestead in the land, the case will be disposed of on appeal, not on the ground that there was no showing when the deed was filed, but on the same theory upon which the motion was tried.

4. **Homestead:** TWO TRACTS OCCUPIED AS HOME. Where two tracts, one of 75 acres and the other of 150, constitute one farm and are occupied by the head of a family as a home, the sale of the larger tract on which was his dwelling house, did not extinguish his homestead in the other. From the time his occupancy and use of both tracts as a home began, his homestead was in both, and he had the right to designate what part of it should be exempt from execution, and when he sold the larger tract, his homestead right continued in the other.

5. ———: ———: ABANDONMENT. The building of a house on the smaller tract and the placing of his parents therein, who were a part of his family, and then the selling of the larger tract, and the removal with the rest of his family to town to send his children to school and to engage himself in mercantile pursuits, with no intention of abandoning his homestead, but with the intention of returning to it, did not constitute an abandonment of his homestead.

6. ———: ESTOPPEL: FAILURE TO CLAIM IN STATEMENT OF FINANCIAL CONDITION. Where a defendant in a statement to a mercantile company enumerates two farms of 225 acres, but fails to state what part is a homestead, he is not thereby estopped from setting up a claim to a homestead therein when a part of the lands are afterwards levied upon to pay a debt due that company. The purpose of the homestead law is to protect the wife and children and other members of the homesteader's family, and not the father or husband alone, and he can not, by a simple declaration, either in writing or otherwise, made at the time the debt was contracted, render nugatory that law.

Appeal from Benton Circuit Court.—*Hon. W. W. Graves*, Judge.

AFFIRMED.

*Thurman, Wray & Timmonds* for appellant.

(1) A motion to quash a levy can not be sustained when the execution and levy is not introduced in evidence. There is nothing upon which the court can act. Blanton v. Martin, 50 Mo. App. 114; Catron v. Lafayette Co., 125 Mo. 67. (2) There is no eveidence in the record that the deed of Bybee was ever filed for record or that he ever had a deed to the land referred to in the testimony. There could be no homestead exemption be-

fore the filing of the deed for record. Sec. 3622, R. S. 1899; Tennent v. Pruitt, 94 Mo. 145; Osten v. Payne, 81 Mo. 576; Shindler v. Givens, 63 Mo. 394; Lincoln v. Rowe, 64 Mo. 138; Barton v. Walker, 165 Mo. 25. (3) A removal is prima facie evidence of abandonment. Kaes v. Grass, 92 Mo. 646; St. Louis Brewing Ass'n v. Howard, 150 Mo. 445; Mills v. Mills, 141 Mo. 195; King v. King, 155 Mo. 406; Bealy v. Blake, 153 Mo. 657. Removal from the homestead for the purpose of engaging in the mercantile business for an indefinite period is an abandonment. Wolf v. Hawkins, 60 Ark. 262; Carton v. Hamil, 58 Iowa 595; Curion v. Gulf, 13 Ky. 84; Jarris v. Moe, 38 Wis. 440; Kimball v. Wilson, 59 Iowa 638; Burch v. Atchison, 82 Ky. 585. The presumption of a homestead right can have no force against the rights of third persons acquired in the interim. Kaes v. Grass, supra; Barton v. Walker, 165 Mo. 25. (4) Bybee is estopped from saying the seventy-five acre tract is not subject to execution. In order to obtain credit from the plaintiff, he deliberately, in writing, said it was not exempt and was subject to the payment of his debts; upon the faith of that representation, the plaintiff sold him goods constituting the debt for which the judgment in this case was rendered. When a party, by his conduct or representations, induces another to act on the truth of such conduct, or representations, and he does so act, such party, so inducing another to act, is estopped from denying the truth of such representations. State ex rel. v. Branch, 151 Mo. 622; Reynolds v. Kraff, 151 Mo. 622; Morris v. McMahan, 75 Mo. App. 494; Shields v. McClure, 75 Mo. App. 631; Alexander v. Railroad, 138 Mo. 464; Williams v. Railroad, 153 Mo. 487. It may be said that the homestead is for the benefit of the family and can not be alienated except by deed joined by the wife, but this statute has never been construed to mean that the homesteader can not abandon his homestead. If he can abandon his homestead, it is equally certain that he can estop himself from claiming

homestead.   Such estoppel operates either as abandonment or to prevent the claim of homestead when such claim would operate as a fraud.

*W. F. Wright, W. S. Jackson* and *G. W. Barnett* for respondents.

(1)   It is unnecessary to prove facts which are admitted by the pleadings.   And the fact of the levy is admitted by plaintiff's answer.   Howell v. Caryl, 50 Mo. App. 440.   Plaintiff throughout the trial proceeded on the theory that an execution had been levied, both in the evidence and the pleadings, and further in the last ground in motion for a new trial plaintiff asserts that the land had been seized under execution.   Plaintiff can not now in this court shift its position and try the case on a theory different from the one adopted by it in the trial below.     Ryan v. Bradbury, 89 Mo. App. 665; Goodman v. Crowley, 161 Mo. 657; Farrar v. Railroad, 162 Mo. 469.   (2)   Plaintiff in this court is estopped from complaining that we did not introduce our deed in evidence, showing the time of acquiring our homestead, because it admitted in the trial below that we acquired the land before the creation of plaintiff's debt.   Therefore, it was unnecessary to introduce the deed.   (3) The 75 acres in question were, when levied upon, the homestead of respondent.   The 75 acres and the 150 acres constituted but one tract, and was occupied and used by respondent before he sold the 150 acres, as a home, and the fact that the defendant resided on a part of the 225 acre tract, other than the 75 acres, and that the value of the 225 acres was in excess of what might be claimed as a homestead, does not defeat defendant's claim.   R. S. 1899, sec. 3617.   The statute does not limit the claimant of a homestead to the part on which his residence happens to be, but he can select any part of the tract provided his homestead forms a part of the tract, and provided the part claimed does not exceed the extent

and value prescribed by the statute. (a) Defendant built a house on the 75 acres for the very purpose of selecting that part of his home place as his homestead. (b) If appellant's contention that defendant could only select and hold as his homestead that part of the home place on which his dwelling house was situate, were correct, then the statute which gives him the right to select any part of the entire tract would be meaningless, as he would be limited in his selection to the particular part on which the dwelling stood. (c) If defendant could have selected under the statute as his homestead the 75 acres exempt, while the entire 225 acres was owned by him, then he certainly could claim the same as exempt after he has sold all but the 75 acres. If he could claim his homestead in any part of the 225 acres, he certainly could sell any part he desired and claim his homestead in the residue. (d) There is no merit in the contention that the 75 acres was not a part of the entire tract because separated from the larger part of the farm by a small stream. Grimes v. Portman, 99 Mo. 229; Perkins v. Quigley, 62 Mo. 498. (e) Defendant occupied this 75 acres, through his parents, who constituted a part of his family, continuously from the time he built the house, until he moved in there himself, but if he had not so occupied it, yet it was a part of his homestead until he sold the 150 acres, and after that it constituted his entire homestead. (4) The removal to Warsaw did not constitute a destruction or an abandonment of the homestead, unless he removed with the intent not to return. Bealey v. Blake, 153 Mo. 657; Mills v. Mills, 141 Mo. 195; Duffey v. Willis, 99 Mo. 132. That he so intended to return and to keep this property as a homestead is established by the undisputed testimony. (5) If the ordinary rules of waiver or estoppel applied to homesteads, yet there is nothing in the written statement read in evidence to constitute a waiver of the homestead right. The question asked defendant as to the value of homestead was not answered. Appellant accepted this state-

ment with the question unanswered and without any declaration therein that defendant did not have a homestead. By thus accepting such statement in that shape appellant is estopped from claiming that it was misled into the belief that defendant would not claim a homestead.   (a) But the ordinary rules of estoppel do not apply to a case of this kind.   The homestead law was passed for the benefit of the wife and children and the husband can not waive its benefits.   7 Am. and Eng. Ency. Law (1 Ed.), p. 141; Carter v. Carter, 20 Fla. 558; Kneetle v. Newcomb, 22 N. Y. 250; Recht v. Kelly, 82 Ill. 147; Branch v. Tomlinson, 77 N. Car. 388; Levicks v. Walker, 15 La. Ann. 245; Motley v. Ragan, 10 Bush (Ky.) 156; Maloney v. Newton, 85 Ind. 565; Bowman v. Smiley, 31 Pa. St. 225; Case v. Dunmore, 23 Pa. St. 94; Brown v. Leitch, 60 Ala. 313; Hosington v. Huff, 24 Kan. 793.  (b) While it would seem that the above authorities would settle the question in our favor, yet the Legislature of Missouri was so zealous in its purpose to guard this homestead right against improvident heads of families, and to make assurance doubly sure, that in the year 1895 it passed an act prohibiting the husband from waiving his homestead rights, even though he attempted to do so by the most solemn instrument.   R. S. 1899, sec. 3616.   (c) If a husband can not estop himself by such a solemn instrument as a deed or mortgage duly acknowledged and recorded, then for a much stronger reason will the courts say that he can not be estopped by the signing the kind of paper relied on in this case.

FOX, J.—This proceeding originated from a levy of an execution in the hands of the sheriff of Benton county, Missouri, upon certain land of respondent, J. W. Bybee.

In respect to the levy it is claimed by respondent that the land levied upon constituted the homestead of respondent, hence was exempt from the levy under the execution.

This proceeding is based upon the following motion filed by respondent:

"Now comes the defendant J. W. Bybee and moves the court to quash the levy of the execution heretofore levied in this cause, as far as the same pertains to the land of defendant J. W. Bybee which has been seized under said execution, because said real estate is exempt from execution, the same being the homestead of the said J. W. Bybee, and because the sheriff in levying said execution failed to advise said Bybee of his rights to homestead and failed to set off his homestead to him as the law requires the sheriff to do in such cases."

While technically appellant was not required to file an answer to this motion, yet one was filed, which is substantially as follows:

"Comes now the plaintiff and for answer to defendant J. W. Bybee's motion to quash levy made by the sheriff of Benton county on the execution issued on plaintiff's judgment against said J. W. Bybee, denies that said real estate so seized and levied on by said sheriff of Benton county, Missouri, under and by virtue of said execution is or was defendant's homestead, and denies that defendant is entitled to homestead in said real estate, and avers the fact to be that if said real estate ever constituted the homestead of defendant, or any part thereof, which fact the defendant denies, the same was abandoned by the defendant long before contracting the debt for which plaintiff's said judgment was rendered, and said defendant, after contracting said debt with plaintiff on the faith of the fact that said homestead, if any ever existed, had been by defendant abandoned, for the purpose of fraudulently depriving this defendant of his remedy in collecting his said debt went into the possession of said real estate and now sets up his pretended claim of homestead.

"Further answering defendant's said motion to quash said levy, plaintiff says that defendant ought not to be permitted to claim said real estate as a homestead

and exempt from sale on said execution, in this, that long before defendant contracted the debt for which plaintiff's judgment was rendered against him, and upon which judgment the execution in this case was issued, defendant had removed from the neighborhood of said real estate, never having actually occupied the same, to the city of Warsaw, Benton county, Missouri, and had become a resident thereof, and engaged in the mercantile business in said city; that said defendant while so engaged in the mercantile business in said city of Warsaw for the purpose of procuring credit and inducing this plaintiff to sell him goods, wares and merchandise on credit and to induce him to contract the debt for which this judgment was rendered, by his conduct, claim and representations led this plaintiff to believe that said real estate was assets in his hands, subject and liable for the payment of debts, and especially the debt which he, the defendant, was endeavoring to contract with plaintiff, and for which debt this judgment was rendered, and that said real estate was not homestead; that this plaintiff had no knowledge or information that said real estate was homestead, or that said real estate was not subject to the payment of the debt about to be contracted with defendant, and believed and relied on such conduct, claim and representation as true, that said real estate was assets in defendant's hands subject to the payment of this, as well as other debts, of defendant, and not homestead, and so relying on said conduct, claim and representation of defendant, extended defendant credit, and contracted the said debt for which said judgment was rendered; that this plaintiff would not have extended said defendant credit and sold him goods, wares and merchandise or contracted said debt if it had not believed and relied upon the said conduct, claim and representations that said real estate was assets belonging to defendant subject to the payment of said debt, and not homestead as now claimed by him; that defendant well knew all of the facts in relation to the said real

estate at the time he, by his conduct, claim and representations, induced said plaintiff to extend him credit, through and by which said debt was contracted on the faith of his said conduct, claim and representations, that said real estate was assets in his hands and not homestead, and subject to the payment of said debt; that to permit defendant now to assert his claim that said real estate is homestead, operates as a fraud on this plaintiff, and wholly deprives it of any remedy or means by which it is able to collect its debt so contracted, and reduced to judgment; that this defendant is insolvent, and without any other property subject to execution on said judgment, so that plaintiff says that defendant ought to be estopped from now asserting his said claim that said real estate is homestead, exempt from execution, after so inducing plaintiff to extend him credit and contracting said debt for which said judgment was rendered on the faith of the fact that said real estate was subject to execution for the payment of defendant's debts.''

The trial court heard the testimony on the motion, which was substantially as follows:

''In 1892, defendant Bybee purchased a farm of 225 acres about 14 or 15 miles from Warsaw, and with his family took immediate possession thereof, or rather he was living on the farm at the time he bought it. He bought this farm in two parts from different persons, 150 acres was purchased from his father and about two months later he purchased 75 acres adjoining the 150, of one Bird, for the purpose and with the intent of making the two tracts one farm which he intended to use and occupy as his home. The 75 and 150 acres had formerly been one farm, and belonged to the same person, but had been sold in two parts to two different persons, and defendant purchased both pieces and used them together as one farm. The two pieces were already enclosed under one fence as one tract, and there was no fence dividing them, but there was a small stream or branch running between the 75 and 150-acre pieces. During all

the time that defendant owned this land up to the time he sold the 150 acres he used the entire 225 acres together as his home place or homestead.

"When Bybee bought this land the house or residence building was situated on the 150 acres, and hence defendant with his family resided on this part where the building was, as there was no building on the 75 acres, yet it formed a part of the entire tract which defendant was occupying as a homestead.

"In 1894 or 1895 defendant built a new dwelling house on this 75 acres with a view and the purpose, as he testifies, of making that new house his permanent dwelling house on said farm, but did not at that time remove from his old house into the new, but as his father and mother lived with him, were dependent on him, and in fact constituted a part of his family, he placed them in this new house, but with the intent of making this new house his own, as well as his parents', dwelling house. The entire 225 acres was farmed together as one place and defendant testified that he built the new house to live in.

"In 1896 defendant with his family (except his father and mother, who remained on the place occupying this new house) removed to a little place called Durock, near by, and engaged in the mercantile business, leaving his father there in charge of the farm for him. He says he went to Durock to engage for a time in mercantile business in addition to his farming operations, but with the intent of holding and retaining this farm as his homestead and with the intent of returning to it. He purchased some lots in Durock, which he lived on about one year during the year and a half he lived there, but he testifies, without any intent of making them his home but only intended them for temporary use while engaged in mercantile business.

"During all the time that defendant was at Durock as well as while at Warsaw, defendant testifies that he kept agricultural implements and personal property on

his said farm, and received supplies for himself and family from the products thereof. He always spoke of and regarded this farm as his home. After remaining at Durock for something over a year he returned to his home on the farm, going into the same house he had left, and his parents occupied the other one. He further states that after staying on there one season, he with his family removed to Warsaw, in the same county, to furnish his children better school advantages, and engage in mercantile business and remained there about eighteen months, leaving his farm in the care of his father and mother. During this time he received supplies from his farm, as before stated, and still retained it as his homestead with the intention of returning to same and without any intent of abandoning it as a home. Some time in 1897 or 1898 he sold the 150-acre part of his said farm, as his circumstances became such that he could not afford to keep all his land, but he retained the 75 acres in dispute for the purpose, as he stated, of keeping this remnant of his home place, as his permanent homestead.

"In the spring of 1900 he with his family returned to this 75 acres and occupied this new house which he had years ago built on said land for his permanent residence, and he still resides there. This land is worth probably $800, much less than the amount exempt as a homestead.

"The debt in question was contracted in 1899 and 1900—and the judgment was rendered and execution thereon issued and levied on the 75 acres in the early part of 1900."

Appellant offered in evidence the account upon which the judgment is predicated. Rolla Bruce testified in behalf of appellant; his testimony simply related to the identification of the financial statement made by the respondent, and further, that credit was given the firm

on the faith of the statement. To the same effect was the testimony of witness Geo. Meyers.

Appellant offered in evidence the financial statement as identified by the witness Bruce. It was as follows:

Date, July 31, 1899.

"Name of firm, J. W. Bybee & Co. Town, Warsaw, Mo.

| Names of members of firm. | Age. | Married. | Single. |
|---|---|---|---|
| J. W. Bybee, | 37 | Yes | —— |
| James Watts, | 38 | Yes | —— |

Capital in business, $3,000.

Contributed by J. W. Bybee & James Watts.

Value of stock, $2,800.

Value of fixtures, $200.

Insurance of stock and fixtures, $2,000.

Mortgage on stock or fixtures, and amount, none.

Cash on hand and in bank, $50.

Outstanding accounts, good, $600.

Real estate, consisting of what and value, $5,500. Two good bottom farms and one good brick business house on Main street, Warsaw, Mo. Held in name of, Business house in name of Jas. Watts, farms J. W. Bybee. Encumbrance on same $2,400.

Homestead, or real estate exempt, included in above, consisting of what and value, $———.

Have borrowed, $600. Lenders are secured by personal security.

Amount of total indebtedness, $3,000.

Remarks: The two farms are good bottom land and belong to J. W. Bybee, encumbrance on the two farms is $1,100, and the business house and lot belong to Jas. Watts, encumbrance $1,300. Total of both $2,400.

Signature, J. W. Bybee & Co.

Stamped on face, 'Received Aug. 1, 1899, Meyer Bros. Drug Co.' ".

At the close of the evidence, the cause was submitted to the court and judgment was rendered sustaining the motion to quash levy of execution. From this judgment, plaintiff prosecutes this appeal to this court.

### Opinion.

There are four propositions presented upon this appeal, for solution.

First. It is urged that the failure to introduce the execution, in pursuance of which the levy was made, must result in the reversal of this cause.

Second. The similar insistence is made that the failure to introduce the date of the filing of the deed, under which the land was claimed, is fatal to the judgment.

Third. That the facts as developed show that respondent was not entitled to a homestead in the premises, and if so, he had abandoned it.

Fourth. That by the statement introduced in evidence, respondent is estopped from claiming homestead.

As to the first proposition, we will say: Ordinarily it is true that it is incumbent upon the party against whom the execution is issued and upon whose property it is levied, to establish the fact of the issuance and levy of the execution by the introduction of it. However, the proceeding upon this motion presented a question of fact to be determined like any other similar question. The facts necessary to be shown upon this motion, by respondent, in order to warrant the court in sustaining it, are no exception to the well recognized and ordinary rule ''that the facts may be admitted or their formal proof waived.''

While the answer filed by appellants was unnecessary and is no pleading recognized in proceedings of this character, still if a statement is made and filed, in

which certain facts are admitted, we see no reason for the necessity of proof of such facts.

If counsel for appellant had, in open court, orally admitted that the execution was issued and levied, this certainly would have avoided the necessity of proof of such facts and we take it that the allegations in the answer before us are of equal force to the oral statements, admitting the facts necessary to be proven. The first allegation in the answer is a broad admission that the execution was issued and levied. It states: "Comes now the plaintiff and for answer to defendant J. W. Bybee's motion to quash levy made by the sheriff of Benton county on the execution issued on plaintiff's judgment against said J. W. Bybee, denies that said real estate so seized and levied on by said sheriff of Benton county, Missouri, under and by virtue of said execution is or was defendant's homestead."

It is apparent, from this statement, that the appellant conceded that the execution was issued and levied, and was not contesting that fact in the trial of this proceeding; hence, it was unnecessary to introduce the execution. The trial court could not escape the conclusion that the execution was issued and levied, from the allegations in the answer.

The same may be said upon the second proposition, as to the failure to introduce the deeds indicating the date of their filing for record. In the record before us, as furnished by appellants, we find that it is admitted that the respondent acquired the land in dispute prior to the time that this debt accrued. This admission by appellant was made in connection with an objection to a question propounded to respondent while he was on the witness stand. The question propounded respondent and the objection thereto are as follows:

"Q. Just tell the court, Mr. Bybee, about how you acquired this land; how you paid for it," etc., etc.?

"Mr. Lay: I object to that question, for the reason it is wholly immaterial; it stands admitted that he

acquired the land prior to the time that this debt accrued."

It is apparent, from the objection and the admission, that appellant was not contesting the fact as to whether respondent had a deed to the land, or the date of the filing for record. It is said expressly by appellant, in the objection to a question as to how he acquired the land, that it was immaterial, and then it made the admission, as stated. It is but a fair presumption that had not the objection and admission been made, the respondent would have, in answer to the question as to how he acquired the land, exhibited his deed to the premises in dispute. Again, it will not be presumed that appellant was intending to make a useless admission, and unless the admission be construed as meaning that he acquired the land by a deed which was duly filed before the debt was created, then it amounts to nothing. For if it was only intended to admit that he acquired the land and not the filing of the deed, the admission could serve no purpose, for the deed would have to be introduced to show its filing.

It is apparent, from the entire record in this cause, that the appellant did not try this case on the theory that defendant's deed was not filed in due time to entitle him to claim a homestead, if, in fact, the land constituted his homestead.

Doubtless, the court accepted the admission on the theory that appellant was conceding that respondent acquired the land by deed duly recorded before the accruing of the debt, and that the contested questions were as to his occupancy of the land as a homestead, his abandonment of it and his estoppel from claiming it by reason of his conduct. In the trial of a proceeding of this character, when the date of acquiring the land depends upon the date of filing the deed for record, an admission, in the form of the one before us, should be construed most strongly against the party making it, and in the absence of anything indicating a limitation

of the admission, it will be taken as meaning that the land was acquired by deed, duly filed for record before the debt accrued. .

This court, in the disposition of causes upon appeal, should determine them on the theory presented in the trial court; litigants should not and will not be permitted to contest a proceeding upon one theory and then, when it reaches this court, shift its position by demanding the formal proof of facts, which were practically admitted in the court below.    [Farrar v. Railroad, 162 Mo. 469; Goodman v. Crowley, 161 Mo. 657.]

It is next insisted that the respondent had two separate tracts of land, one of 150 acres, the other, which is in dispute, of 75 acres; that his dwelling house was on the 150-acre tract, hence he was not entitled to claim the 75-acre parcel as his homestead.    The testimony in this cause, as disclosed by the record, shows that these two tracts of land constitute one farm, and were occupied by respondent as a home, until he sold the 150-acre tract.    It was occupied as one tract and had this execution been levied on the whole 225 acres, respondent, under the statute, would have had the right to designate to what part of it the exemption should apply.    [R. S. 1899, sec. 3617.]    The mere fact that his residence was on one of the tracts did not confine his homestead exemption to that particular tract. His use and cultivation of the entire tract, in contemplation of the homestead act, made his occupancy of the 75-acre parcel just as full and complete as the one upon which his residence was located. The separation of these two tracts by a stream did not destroy the right of respondent to claim his homestead exemption on any portion of the entire tract, if it was used as a whole and used in connection with each other. Tracts of land occupied as a homestead need not be contiguous, but frequently are long distances apart and if they are used as a whole and in connection, the homestead exemption may be selected and claimed from any

portion of it. [Grimes v. Portman, 99 Mo. 229; Perkins v. Quigley, 62 Mo. 498.]

The testimony in this cause clearly indicates that respondent occupied the entire tract of 225 acres, as a home for himself and family. He sold the 150-acre tract and built a new house on the 75 acres, placed his parents there, who, as he testifies, were a part of his family, and unless the testimony shows that he abandoned it, there was ample testimony to authorize the trial court in holding that the homestead exemption of respondent was applicable to the 75-acre tract.

This leads us to the proposition contended for by appellant, that respondent abandoned this homestead. To support this contention, appellant must rely solely upon the testimony of respondent, J. W. Bybee. His testimony, briefly summarized, is that he built the new house on the land in dispute, for the purpose of preserving a home; that his parents were old and he kept them as a part of his family and placed them in this new building; that he never left the occupancy of this land with the intention of not returning, but the reverse; that his leaving it was temporary, and that he always expected to return to it as his home; claimed it as his home; kept part of his farming implements on the place and kept his father and mother on the place, as he claimed, as members of his family.

If the testimony of the respondent is true, it fully authorized the trial court in reaching the conclusion that there was no abandonment. The court had the witness before it, and doubtless, in weighing his testimony, applied the usual and ordinary tests of the credibility of witnesses and the weight to be attached to their testimony, and we are unwilling, in view of the recognized rule as to that deference to be paid to the findings of the trial court, to disturb this judgment on that account.

This leads us to the consideration of the only remaining proposition involved in this proceeding. That is, the question of estoppel by reason of the statement

made by the respondent. Conceding, for the purposes of this case, that the failure to state the amount of farm property exempt from execution must be construed as a declaration, on the part of respondent, that none of his farm lands were exempt from execution, we are confronted with the proposition—does this statement operate an estoppel upon the respondent and prevent him from asserting his claim to homestead exemption?

In the consideration of this question, it is highly important to keep in view the policy and the purposes sought to be accomplished by the homestead act. In treating of the principle upon which the homestead laws are predicated, Mr. Thompson, in his work on Homesteads (sec. 1), says:

" 'The law' said the Supreme Court of Iowa, in an early case, 'is based upon the idea that, as a matter of public policy, for the promotion of the property of the State, and to render independent and above want each citizen of the government, it is proper he should have a home—a homestead—where his family may be sheltered and live beyond the reach of financial misfortune and the demands of creditors who have given credit under the law.' And this policy is characterized as 'liberal' and 'benevolent.' And we find scattered through the cases which involve the construction of these laws such expressions as these: 'This beneficent provision for the protection and maintenance of the wife and children against the neglect and improvidence of the father and husband.' 'That the homestead exemption was founded upon principles of the soundest policy can not be questioned. Its design was, not only to protect citizens and their families from the miseries and dangers of destitution, but also to cherish and support in the bosoms of individuals those feelings of sublime independence which are essential to the maintenance of free institutions. These are noble objects.' 'It was an enlightened public policy, looking to the general welfare as well as to that of the individual citizen, which dic-

tated the passage of the homestead act; and the obvious intent of the act is to secure to *every* householder or head of a family a home, a place of residence, which he may improve and make comfortable, and where the family may be sheltered and live beyond the reach of those financial misfortunes which even the most prudent and sagacious can not always avoid.' "

This being a clear and correct announcement of the purposes of the homestead provisions, is it not made apparent that the ordinary rules of estoppel should not be made applicable to heads of families who are entitled to claim it? If the mere statements of a pressed debtor can operate as and are a bar to the claim of homestead rights, then we confess that "the wise and benevolent policy which dictated the enactment of these provisions, has been absolutely destroyed."

The homestead laws were never primarily enacted for the benefit of the father or husband; their true spirit is the protection of the wife and children against a careless and improvident father and husband. We have reached the conclusion that the statement made by respondent, as to his financial condition, does not operate as an estoppel or waiver of his right to claim his homestead exempt from the levy of the execution issued in this proceeding. This conclusion is supported by practically all the courts that have had occasion to give expression to their views upon the principle involved in this contention.

In Carter's Admrs. v. Carter, 20 Fla. 558, the Supreme Court of that State, in an able and exhaustive review of all the authorities, announced very forcibly and clearly the doctrine that there can be no waiver of the right to claim exemption, by agreement or statement in writing, in advance of the time when the right is to be exercised. While in the discussion of the question by the different courts, it is treated of under the head of the doctrine of waiver, it is apparent that the same principle is involved, whether it be called estoppel

or waiver.   In Case v. Dunmore, 23 Pa. 94, it was ruled that a party, at the time of contracting the debt, might agree to waive the benefit of his exemptions under the law.   It will be observed that this rule was afterwards, by the same court, regretted, as is indicated in the expressions of WOODWARD, J., in Shelly's Appeal, 36 Pa. 373-380.   He said:

"Perhaps it would have been well, if the court had set out by denying the capacity of the debtor to waive the statutory exemption in favor of *any* creditor.   It might have been urged in support of such a view, that the Legislature intended a benefit to the family of the debtor, rather than to the debtor himself; and that his caprice or will, tempted as they might be by the creditor, should not defeat the legislative benefaction in favor of those who were dependent upon him."

In Kneettle v. Newcomb, 22 N. Y. 250, the rule is very clearly announced.   The question involved in that case was the enforcement of an agreement contained in a note to waive all claims of exemption.   The court said:

"The statutes which allow a debtor, being a householder, and having a family for which he provides, to retain, as against the legal remedies of his creditors, certain articles of prime necessity, to a limited amount, are based upon views of policy and humanity which would be frustrated if an agreement like that contained in these notes, entered into in connection with the principal contract, could be sustained.   A few words contained in any note or obligation would operate to change the law between those parties, and so far disappoint the. intentions of the Legislature. If effect shall be given to such provisions, it is likely that they will be generally inserted in obligations for small demands, and in that way the policy of the law will be completely overthrown.   Every honest man who contracts a debt expects to pay it, and he believes he will be able to do so without having his prop-

erty sold on execution. No one worthy to be trusted would, therefore, be apt to object to a clause subjecting all his property to levy on execution in case of non-payment. It was against the consquences of this over-confidence, and the readiness of men to make contracts which may deprive them and their families of articles indispensable to their comfort, that the Legislature has undertaken to interpose.''

In Recht v. Kelly, 82 Ill. 147, a note had been given expressly waiving the benefit of all laws exempting real or personal property from levy and sale. The court said: ''The exemption created by the statute is as much for the benefit of the family of the debtor as for himself, and for that reason, he can not, by an executory contract, waive the provisions made by law for their support and maintenance. Such contracts contravene the policy of the law, and hence are inoperative and void. The owner may, if he chooses, sell or otherwise dispose of any property he may have, however much his family may need it, but the law will not aid him in that regard, nor permit him to contract, in advance, that his creditor may use the process of the courts to deprive his family of its benefit and use, when an exemption has been created in their favor. Laws enacted from con-siderations of public concern, and to subserve the gen-eral welfare, can not be abrogated by mere private agreement.''

In the Florida case, supra, after reviewing all the authorities the court, in conclusion, by way of emphasis to its research, says:

''We have been unable to find in reports, text-books, or digests, that it has been held anywhere except in Pennsylvania that a written agreement, contained in a note, to waive the right to claim an exemption of per-sonal property from levy and sale to satisfy a judgment rendered on the note, has been sustained. And even in that State the court has expressed regret that a contract of that kind had ever been sustained and that such rule

had become established as the law by the repetition of a bad precedent.''

To the same effect are the conclusions reached by the courts of Kentucky, Louisiana, North Carolina, Iowa and many other States. [Moxley v. Regan, 10 Bush 158; Phelps v. Phelps, 72 Ill. 548; Branch v. Tomlinson, 77 N. C. 388; Levicks v. Walker, 15 La. Ann. 245; Curtis v. O'Brien, 20 Iowa 376.]

While Tapley v. Ogle, 162 Mo. 1. c. 197, did not involve the precise question now being discussed, the forcible and clear expressions by BURGESS, J., in discussing the subject of homestead, indicate clearly the views of this court in respect to waiver of the right to claim the same, under the exemption laws of this State. In the course of the opinion in that case, he said: ''The most positive parol promise to sell the land, or not claim it as a homestead, would have been void in law even though the consideration may have been ample. And if plaintiff had been assured by Ware at the time he purchased the land that he would not claim it as a homestead, he would not have been estopped to make it, for the obvious reason that the statute makes void all efforts to transfer interest in land except by some instrument in writing.''

The principle so thoroughly discussed and correctly announced in the cases herein cited, is specifically applicable to the question involved in this case, as to the estoppel or waiver of right to claim homestead.

It is so apparent from the provisions of our homestead law, that its purpose is the protection of the wife and children or other members of the family, and not the father or husband alone, that it is hardly necessary to cite authorities to support the position that the father or husband who contracts a debt, can not, by a simple declaration either in writing or orally, render nugatory the wise provisions of the homestead law, and deprive those whom the law makers especially had in view, at the time of its enactment, of the protection that was so

clearly contemplated by its provisions. The conclusion reached by this court upon this proposition, is emphasized by the provisions of our statute upon this subject.

As indicative of the great value attached to the homestead rights by the law-making power of this State and how earnestly it is sought to guard the interests of those entitled to its benefits, we point to section 3616, Revised Statutes 1899, which prohibits the husband from mortgaging, selling or alienating the homestead without being joined by his wife in the conveyance. We find additional interest manifested by the provisions of section 4335, Revised Statutes 1899, which authorizes married women to invoke exemption under homestead laws now in force. These provisions indicate the true spirit of our homestead law, and after a careful consideration of this proposition, we have reached the conclusion that the action of the trial court, in declining to hold that the statement of respondent introduced in evidence operated as an estoppel or waiver of his homestead rights, was manifestly correct.

We have given the assigned errors complained of by appellant in this proceeding our most careful attention and consideration, and finding no reversible error, the judgment should be affirmed and it is so ordered. All concur.