## LAMB *v.* LAMB.

HUSBAND AND WIFE—ANTENUPTIAL AGREEMENT—EXECUTION.

Evidence in a cause involving the execution by complainant widow of an antenuptial release in all property possessed by her husband, who also agreed to a like settlement, *held,* to be sufficient to sustain the signing of the contract with full understanding of its contents by the wife.

Appeal from Lenawee; Hart, J. Submitted June 22, 1916. (Docket No. 14.) Decided July 21, 1916.

Bill by Elizabeth Lamb against Edward R. Lamb,

executor of the last will and testament of John M. Lamb, deceased, and others, to be allowed to file her election, as widow, to take under the statute rather than under the terms of said will. From a decree dismissing the bill, complainant appeals. Affirmed.

*Fellows & Chandler,* for complainant.

*Baldwin, Alexander & Russell* and *D. B. Hayes,* for defendants.

MOORE, J. The complainant was married to John M. Lamb on the 12th day of January, 1896. Both had previously been married. The first husband of complainant was a brother of her second husband. The complainant had one child by her former marriage, and John M. Lamb had six children by his former marriage, who are the defendants. The complainant at the time of the hearing, June, 1915, was 83 years old. John M. Lamb died in September, 1912, and was then 85 years of age. At the time of the marriage the complainant was the owner of a farm of 107 acres, worth from $50 to $60 an acre. John M. Lamb at the time of the marriage had a farm, which was called "Dover Farm," on which he lived, consisting of 156 acres, and considerable other property, but just how much at that time does not appear. John M. Lamb made a will, which bears date November 8, 1904, and it was admitted to probate in November, 1912. The will so far as is material here bequeaths to the complainant $500 and $2,000 worth of Globe Fence stock which was worthless at the time of Mr. Lamb's death. The inventory of the estate shows the value to be $93,780.87. Claims amounting to $8,556.06 were allowed. The $500 legacy was paid to complainant. July 25, 1914, complainant filed a petition with the probate court containing these words:

"I further represent that I am of the age of 82 years, and that the family of said deceased, dependent upon

said estate for support, consists of petitioner, his widow. I, therefore, pray that all statutory allowances may be assigned to me, and that I may be allowed the sum of $3,000 for the support and maintenance of myself during the settlement of said estate."

The executor consented to the allowance as prayed, and it was made and promptly paid. On the 12th day of August, 1914, the complainant filed her bill in this cause, charging that she was induced, by the representations and promises of the defendants that she should have the use of the house and lot and a liberal support, not to seek advice and learn her rights in the matter of this estate, and thus file her election to take under the statute, and not under the will, until the time had gone by within which she could do so. She asks a decree which will permit her to file her election to take under the statute, and which shall estop the defendants from asserting in the probate court that she has waived her right to file her election to take under the statute. The defendants filed an answer, denying any fraud, and setting up as a bar of the widow to any rights under the statute, an antenuptial agreement. The complainant filed her replication under oath, denying the execution of this agreement. The paper claimed to be an antenuptial agreement reads as follows:

"WHITTIER, CALIFORNIA.

"This agreement entered into the fourth day of January, 1896, betwixt J. M. Lamb of the township of Dover, county of Lenawee and State of Michigan, of the first part, and Elizabeth E. Lamb, of the township of Rollin and county and State aforesaid, of the second part: Witness that the parties named in the above contract mutually and firmly agree that they will not, in no case, claim any property belonging to each other, before death, or any portion of each other's estate after the death of either one.

"J. MILLS LAMB.
"ELIZABETH E. LAMB."

The hearing was in open court.   After hearing the testimony and the arguments of counsel the trial judge stated in writing:

"I. The court finds in this case that the complainant, Elizabeth Lamb, executed Exhibit 1 with a full understanding of its contents, and with a knowledge that it would bar her rights in and to her husband's estate after his death.

"II. The court further finds that the allegation in the bill of complaint, claiming that the complainant neglected to file her election to take under the law within the year, was not due to any active or passive fraud of the defendants, but was brought about by her recognizing and believing that Exhibit 1 gave her no rights in her husband's estate, except so far as he might have done so by his last will and testament.   The court finds that the $500 legacy paid to her under the will was paid before the expiration of the year in which she had a right to make an election.

"III.   For these reasons, the bill of complaint in this cause is hereby dismissed, without costs to either party."

From a decree dismissing the bill of complaint the case is brought here by appeal.

Learned counsel have prepared long and able briefs, citing at length the law which they claim is applicable to the case.   We think the pivotal question is one of fact, namely, Was the antenuptial agreement understandingly made?

On the cross-examination the complainant testified in part:

"Before my marriage to John M. Lamb I had been living in Rollin, this county.   I was the widow of William Lamb, a brother of John M.   I have known John M. Lamb a good many years before my marriage to him.   When he was a young man both of the Lamb brothers and the whole family lived near us.   My husband and myself frequently visited with John M. Lamb's people.

"*Q.* You knew that John M. Lamb was a man of considerable means before you married him?

"*A.* I knew he had a home where he could take me. I would not marry any man without knowing that he had a place to take me, a home for me. I knew that Mr. Lamb was in fair circumstances, not wealthy. I had a home of my own at that time, a farm of about 106 acres."

It is true that she denied the execution of the writing we have quoted, but the testimony is overwhelming that she executed the paper and executed it understandingly.

It would profit no one to recite the testimony at length. Here were two people upwards of 60 years of age, one a widow with one child and property worth $6,000 or more, and a widower with six children who had considerably more property than the widow. They had known each other for years, and knew about each other's families. They were about to be married. The record is very persuasive that the paper was understandingly made. This court has had occasion to discuss the law applicable to the situation disclosed here. See *Hockenberry* v. *Donovan*, 170 Mich. 370 (136 N. W. 389), and the authorities cited therein.

The decree is affirmed, with costs to defendant.

STONE, C. J., and KUHN, OSTRANDER, STEERE, BROOKE, and PERSON, JJ., concurred. BIRD, J., did not sit.