SAMUEL T. BUSSARD, Appellee, v. A. F. PARKER et al., Appellants.

**MORTGAGES:** Foreclosure—Appointment of Receiver. A receiver is
1 properly appointed in a real estate mortgage foreclosure in accordance with an agreement in the mortgage to that effect, on a showing that, when the foreclosure was instituted, (1) the debtor was insolvent, (2) the taxes and interest were long overdue, and (3) the security was inadequate.

**HOMESTEAD:** Abandonment—Agreement to Surrender. An agree-
2 ment for the settlement of a real estate mortgage foreclosure, under which the holder of the legal title and his wife agree, for a valuable consideration, to quit and surrender the premises and to release all interest therein, works an abandonment of whatever homestead right said parties may have in the land.

*Appeal from Page District Court.*—EARL PETERS, Judge.

MAY 6, 1924.

ACTION to foreclose two mortgages and to have receiver appointed to care for the rents and profits of the premises dur-

ing the year of redemption. The opinion sufficiently states the facts. The prayer for relief was granted, and decree was entered accordingly. Defendants A. F. and Tatha E. Parker appeal.—*Affirmed.*

*Wilson, Keenan & Millhone,* for appellants.

*Ferguson, Barnes & Ferguson,* for appellee.

DE GRAFF, J.—This appeal presents issues that are within fairly narrow compass. The petition states, in usual and ordinary language, a cause of action to foreclose two first mortgages for $11,000 each, on two 40's of real estate situated in Page County, Iowa. When the suit was instituted, the interest and taxes were due and unpaid for two years last past. The fee-title holder was the defendant A. F. Parker, who had purchased the land from the defendant N. C. Nelson on February 26, 1921, and at the time of purchase assumed and agreed to pay, as part of the consideration, the then existing mortgages of $11,000 each, which had been executed by Nelson to the plaintiff Bussard on June 26, 1920. By reason of the breach in the conditions of the mortgages and notes, plaintiff filed his petition on October 3, 1922, and, relying upon the receivership provision in said mortgages, asked that a receiver be appointed, and further alleged as grounds therefor that the defendant Parker was insolvent, that the mortgages were excessive, and that plaintiff would suffer irreparable loss unless said receiver was appointed. During the pendency of the action, an application for hearing on the appointment of a receiver was filed, to which no answer or resistance was made, nor was the evidence offered in support thereof controverted by the defendants. A temporary receiver was appointed, and qualified. Upon the final hearing of the cause, the defendants did not appear in person or by counsel, except that answers had been filed by the Parkers, in which he admits the execution of the notes and mortgages; that he assumed and agreed to pay them; and that he was then in occupancy of the premises, and had been for a period of about one and one-half years, claiming homestead rights. His wife, Tatha, denied the

1. MORTGAGES: foreclosure: appointment of receiver.

allegations of plaintiff's petition, pleaded homestead rights, and asked that no personal judgment be entered against her. It further appears that, after the suit was commenced, adjustment of the differences between the plaintiff and the Parkers was attempted, and as a consummation thereof, a writing was executed and signed by the Parkers. This agreement recited the receipt of $400 paid by Bussard in full settlement of any claims, rights, or demands against the plaintiff or in the lands now and heretofore occupied by them; and, in consideration of the payment, cancellation, and release of the two mortgages on said land of $11,000 each, with accrued interest, and also the release of a junior mortgage given by the Parkers to N. C. Nelson, and now appearing of record to be the property of the United States Trust Company of Omaha, under assignment of Carl Marfisi, the Parkers agreed to give possession of the said 80-acre tract not later than March 1, 1923, and remove therefrom and turn the same over to the plaintiff Bussard or his assigns without further notice, proceedings, or demands. This agreement was signed January 19, 1923, but was later repudiated by the Parkers for the sole reason, as disclosed by the record, that four commission notes of $47.50 each, given by the Parkers to Nelson when the second mortgage on the land was executed, were not included in the agreement. Incidentally it may be said that the plaintiff had no knowledge or connection with the four small notes. He had never owned them or had any interest in them, and they were not made a matter of reference in their agreement of settlement. The notes were not in possession of plaintiff, and consequently he could not deliver them. As a result of the agreement, and also a prior agreement signed by Bussard and Parker on January 17, 1923, incorporating, in substance, the same conditions, the foreclosure suit was not assigned for hearing and decree at the January term of court, but was continued over until the March term, with the expectation on the part of plaintiff that the terms of the settlement would be respected and effectuated. The record shows that plaintiff stood ready, and was able and willing, to perform his part of the contract. Two checks of $200 each, with other papers, were turned over to their mutual agent, John Lingo, who had instructions to act in the premises as agreed between the parties. A dismissal of the action, with

prejudice, with costs to be taxed to the plaintiff, was prepared by plaintiff's attorneys and sent to the First National Bank of Essex, with instructions to hand to Mr. Parker when the deed by Parker and his wife to plaintiff was signed and recorded. A release of the second mortgage was secured and sent to Mr. Lingo, together with the notes secured thereby, as well as releases to the first mortgages in suit. All of these papers were tendered to Parker, in conformity to the executed agreement of settlement. Parker refused. In the language of Lingo:

"I was to hand him these releases and dismissal of the case and these two checks. Parker then said he would not settle unless he got the four Nelson notes of $47.50 each. The first time he ever referred to these notes was after I got all of the releases and these other things."

He refused to respect the agreement because Lingo could not give up the four Nelson notes. There is the rub. Parker, however, prior to the final hitch in the proceedings, did perform in part. A public sale was had, at which time he sold all of his live stock except the family cow and the children's pony. He rented a house in Essex for the period of one year, and was about to enter into the management of an oil-filling station in that town. All of this was done with the full knowledge, consent, and acquiescence of his wife, Tatha, and with the intention on their part to surrender possession of the premises, as stipulated.

Clearly, there is a legal sanction for the appointment of a receiver, both temporary and permanent. It was the duty of a court of equity, having complete jurisdiction of the parties and subject-matter, to protect the plaintiff-mortgagee from consequent loss and damage, under the circumstances of the instant case.

Parker was in fact insolvent, and the security insufficient. The agreement between the parties is a valid contract, and constituted an abandonment of whatever homestead rights the

2. HOMESTEAD:
abandonment:
agreement to
surrender.

Parkers might have otherwise claimed. They are in no position to complain. The trial court was justified in protecting plaintiff from further imposition and damage. The defendants cannot play fast and loose. They must come into equity with clean hands. They had

waived whatever homestead right they otherwise could have asserted. This makes it unnecessary to determine whether the Parkers, independently of the waiver and abandonment, could assert a homestead right, as against the right of the plaintiff-mortgagee to have a receiver appointed. Clearly, under the record, the mortgage was a valid lien on the land when the Parkers acquired title. The debt is for purchase money, which Parker assumed and agreed to pay.

Under the record facts, the court properly entered a decree in conformity to plaintiff's prayer for relief, and the judgment entered must be, and is,—*Affirmed*.

ARTHUR, C. J., STEVENS and VERMILION, JJ., concur.