**Duane Donald HEBERT, Debtor.**

No. 03–00417S.

United States Bankruptcy Court, N.D. Iowa, Western Division.

Sept. 19, 2003.

Donald H. Molstad, Sioux City, IA, for Debtor.

## ORDER RE OBJECTION TO EXEMPTION and ORDER RE MOTION TO AVOID LIEN

WILLIAM L. EDMONDS, Bankruptcy Judge.

On May 12, 2003, debtor filed a motion to avoid two judgment liens pursuant to 11 U.S.C. § 522(f), alleging that the liens impaired his homestead exemption. On June 2, judgment creditor Midwest Fuels, Inc. timely objected to the debtor's claim of exemption in his homestead and resisted the motion. Hearing on these matters was held in Sioux City on July 29, 2003. Donald H. Molstad appeared as attorney for debtor Duane Donald Hebert. Attorney Chad Thompson represented creditor Midwest Fuels. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (O). Both parties have filed briefs. The court now issues its findings of fact and conclusions of law as required by Fed. R.Bankr.P. 7052, made applicable by Fed. R.Bankr.P. 9014.

### Findings of Fact

Duane Hebert filed a Chapter 7 bankruptcy petition on February 13, 2003. He listed in his schedule of real property an interest in property legally described as:

The S 40′ of Quarter Block 1, in Block 9, Higman's Addition to Sioux City, in the County of Woodbury and State of Iowa, and the S 68′ of the N 118′ of Quarter Block 1, in Block 9, Higman's Addition to Sioux City, in the County of Woodbury and State of Iowa.

The property is locally known as 1615–1617 Pierce Street, Sioux City (the "Pierce Street property"). The court takes judicial notice that the property is not agricultural land. Hebert claimed the property exempt as his homestead.

Hebert purchased the Pierce Street property under a real estate contract executed October 26, 2001. Exhibit A. Beginning on or about that date, he has continuously occupied the property as his homestead.

In 2001, Hebert was involved with an entity known as Paladin Development, Ltd. ("Paladin"). Paladin was formed by Charles Lieber, owner of the Palmer House on Gordon Drive in Sioux City. Paladin operated a restaurant, called "Chuck and Ed's," and a convenience store on that property. Hebert could not say precisely what his interest was in Paladin, but he said that he managed the restaurant.

At some point, Hebert decided to part ways with Lieber because of disagreement about running the business. Hebert stopped working at the restaurant about September 2001.

On October 16, 2001, Hebert entered into a purchase agreement to buy the Pierce Street property. Exhibit C. Emil D. Lieber and Mary E. Lieber executed the agreement as sellers. The agreement stated "down payment is credit for corp transfer Paladine Development Inc." *Id.*, ¶ 1.E.

A contract for deed on the property was subsequently executed by Hebert, as buyer, and C & E Investment Group, a partnership, a/k/a C & E Investments, as seller. Emil and Mary Lieber signed as partners of the seller. Exhibit A. Hebert said C & E Investments was a business of Charles Lieber and his father.

The contract purchase price was $115,000; the contract acknowledged that $35,000 of that price had been paid. An attachment to the contract set out additional provisions as follows:

A) Down Payment. Buyer shall receive a credit in the amount of $35,000.00 representing the entire down payment required under this Contract in exchange for which Buyer shall transfer to David Rusley (on behalf of Seller) all of Buyer's right, title and interest in the shares of stock of the Iowa corporation known as Paladine Development, Inc. Buyer represents and warrants to Seller and to David Rusley that Buyer is the sole owner of all of the issued and outstanding shares of stock of said corporation; that said shares are free and clear of all liens and encumbrances; that Buyer is the sole director and officer of the corporation and is possessed of the lawful authority to transfer said shares without restriction; that said corporation is in good standing with the State of Iowa and has filed all required corporate reports to date; that David Rusley shall become the sole shareholder, director and officer of the corporation upon completion of the closing of this transaction and that Buyer shall transfer to David Rusley all corporate records with regard to said corporation at the time of closing hereunder.

. . .

E) Assignment of Contract. Buyer acknowledges that Seller will assign its interest in this Contract to Raymond W. Hall. Buyer shall make all payments of principal, interest and taxes required

under this Contract to Raymond W. Hall at the following address: P.O. Box 20457, Bloomington, MN 55420.

Exhibit A. On October 26, 2001, C & E Investment Group executed a warranty deed transferring its interest in the Pierce Street property, subject to the contract with Hebert, to Raymond W. Hall. Exhibit D. The real estate contract and warranty deed were filed with the Woodbury County Recorder October 31, 2001.

Midwest Fuels, Inc. is a wholesaler of fuel oil, gasoline and diesel fuel. Dan Steichen owns the business. Charles Lieber approached Steichen about purchasing fuel for the Palmer House convenience store. Steichen quoted Lieber a price that was agreed upon.

Steichen's practice is to request a personal guarantee when selling fuel to a corporation. Charles Lieber told Steichen that Paladin would be the purchaser and that Hebert would guarantee the debt. Hebert's financial statement was sent to Steichen by fax. On November 30, 2001, Steichen met with Leiber and Hebert at the convenience store to obtain Hebert's guarantee. The three drove across the street to a bank, where Hebert executed the document in front of a notary. The document is titled "GUARANTY OF PAST AND FUTURE INDEBTEDNESS." The final paragraph states in its entirety: "The guarantors hereby waive the benefit of all Homestead exemption laws." Only Hebert signed the guarantee. The document contains no reference to the Pierce Street property and no other reference to a homestead. Exhibit B.

Midwest Fuels delivered four or five loads of fuel to the convenience store. Each load was valued at about $7,000 or $8,000. Because of an error in the first draft of the guarantee document, Midwest Fuels delivered one load of fuel to the store prior to the date the guarantee was signed.

Paladin paid for only two or three loads of fuel. It owed Midwest Fuels approximately $12,000. Midwest Fuels brought suit in state court against Paladin, C & E Investments and Hebert. On October 21, 2002, it obtained judgment by default against Hebert in the Iowa District Court for Woodbury County, Case No. LACV 123757.

## Discussion

█ Midwest Fuels bears the burden of showing that Hebert has not properly claimed an exemption in his homestead. Fed.R.Bankr.P. 4003(c). Hebert bears the burden of proof on all issues in his lien avoidance motion. *In re Indvik*, 118 B.R. 993, 1005 (Bankr.N.D.Iowa 1990).

█ Under Iowa law, a debtor's homestead is generally exempt from judicial sale, unless there is a "special declaration of statute to the contrary." Iowa Code § 561.16. Iowa Code § 561.21, which provides certain exceptions to the homestead exemption, states in relevant part—

The homestead may be sold to satisfy debts of each of the following classes:
1. Those contracted prior to its acquisition . . .
2. Those created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt.
3. Those incurred for work done or material furnished exclusively for the improvement of the homestead.

. . .

Iowa Code § 561.21.

There is no evidence that any of the debt at issue predated the acquisition of

the homestead. Midwest Fuels relies on § 561.21(2) and contends that the guarantee constitutes a "written contract ... expressly stipulating that [the homestead] shall be liable."

■ Hebert argues that a statutory waiver of the homestead must contain the legal description of the property. The case of *In re White*, 293 B.R. 1 (Bankr. N.D.Iowa 2003), cited by Hebert, is not helpful as regards this issue. In *In re White*, the debtor waived the homestead exemption in a transaction secured by a mortgage. An instrument granting a mortgage must set out the legal description of the property. Iowa Code § 561.13. The issue in *White* was the effect of the waiver on a new homestead. It was not disputed that the waiver, as executed, was effective.

The guarantee prepared by Midwest Fuels is a simple contract, not a present transfer of an interest in Hebert's property. A contract need not be a mortgage to constitute a waiver of the homestead exemption pursuant to § 561.21(2). *Foley v. Cooper*, 43 Iowa 376 (1876) (construing predecessor statute); *see also Bussard v. Parker*, 197 Iowa 1074, 198 N.W. 490 (1924) (settlement agreement waived homestead). The court must decide whether the contract of guarantee executed by Hebert is sufficient to constitute a statutory exception to the homestead exemption under that section.

Midwest Fuels contends there is no statutorily mandated form for waiver of a nonagricultural homestead. Section 521.22 specifies the minimum type size to be used and language that must be included in a written contract waiving a homestead "affecting agricultural land." *Chelsea State Bank v. Wagner (In re Wagner)*, 259 B.R. 694 (8th Cir. BAP 2001). This statute is not applicable in Hebert's case. *But see Peoples Bank & Trust Co. of Cedar Rap-*

*ids v. Lala*, 392 N.W.2d 179, 191 n. 2 (Iowa 1986) (as enacted in 1986, § 561.22 applied to waiver of any homestead).

Case law shows, however, that § 561.21(2) has its own requirements of specificity before a document will be construed as one "expressly stipulating that [the homestead] shall be liable." In *Rutt v. Howell*, 50 Iowa 535 (1879), debtors executed a confession of judgment that included the following language: "And if payment is not made hereon on or before the 20th day of January, A.D., 1870, aforesaid, execution may issue on this judgment immediately thereafter against any property belonging to said defendants, homestead included." The petition alleged that the judgment, through oversight, did not include the debtors' stipulation that the homestead would be liable for the debt, did not describe the property, and failed to make the judgment a lien on the debtors' home. The petition prayed for correction of the judgment to conform to the intent of the parties. The court held that the language in the confession of judgment was not an "express stipulation that the homestead shall be liable for the debt" within the meaning of the statute. It determined that the language was merely a waiver of exemption statutes, and denied relief.

In *Maguire v. Kennedy*, 91 Iowa 272, 59 N.W. 36, 37 (1894), plaintiff was the holder of a note executed by defendant and his wife. The note included the statement that "all homestead and exemptions are expressly waived." The court quickly dismissed this phrase as ineffective. "We do not think that the provision ... has any reference to, or connection with, the property in controversy." Moreover, the court ruled that the waiver provision did not comply with the statutory predecessor of § 561.21(2), citing *Rutt v. Howell*.

■■ These Iowa cases indicate that, for a contract to come within § 561.21(2), the document must contain at a minimum

a statement in the form of a stipulation that the homestead will be liable for the debt. The contract must also refer to specific homestead property. Although the cases are not explicit on the point, the best practice would be to do so by legal description.

The statement in Hebert's guarantee, that "guarantors hereby waive the benefit of all Homestead exemption laws," is no more specific than the waiver clause in *Rutt v. Howell.* The court concludes, therefore, that the waiver provision was not effective. It did not "expressly stipulate" that Hebert's homestead would be liable for the debt owed to Midwest Fuels.

Because the waiver provision was unenforceable under Iowa law, Hebert's homestead was exempt on the date that Midwest Fuels obtained judgment against him. Consequently, its judgment lien did not attach to Hebert's homestead. *Lamb v. Shays,* 14 Iowa 567 (1863).

■ Section 522(e) of the Bankruptcy Code provides an additional basis under federal law for overruling the objection to Hebert's claim of homestead exemption. "A waiver of an exemption executed in favor of a creditor that holds an unsecured claim against the debtor is unenforceable in a case under [title 11] with respect to such claim against property that the debtor may exempt under [§ 522(b)]." 11 U.S.C. § 522(e). The court concludes that § 522(e) is applicable to creditors who hold an unsecured claim against the debtor as of the date of the bankruptcy petition. As discussed above, the judgment lien of Midwest Fuels did not attach to Hebert's homestead. It had unsecured claim against him of the date of his filing. Therefore, § 522(e) renders the waiver unenforceable as a matter of federal law. The objection to the claim of exemption should be overruled.

The court has determined that the judgment lien of Midwest Fuels did not attach to Hebert's homestead property. The motion to avoid liens should be denied as unnecessary.

### ORDER

IT IS ORDERED that the objection to debtor's claim of exemption in his homestead is overruled.

IT IS FURTHER ORDERED that, because the judgment liens of Midwest Fuels, Inc., Case No. LACV 123757, and Jeffery L. Loax, dba Eagle Construction, Case No. SCCV 90957, both arising in the Iowa District Court for Woodbury County, did not attach to Hebert's property, legally described as—

> The S 40′ of Quarter Block 1, in Block 9, Higman's Addition to Sioux City, in the County of Woodbury and State of Iowa, and the S 68′ of the N 118′ of Quarter Block 1, in Block 9, Higman's Addition to Sioux City, in the County of Woodbury and State of Iowa,

the motion to avoid liens is denied as unnecessary. Judgment shall enter accordingly.