BRANCH & CO. v. WILEY TOMLINSON.

*Personal Property Exemption--Waiver--Executory Contract.*

1. Where the defendant agreed under seal not to claim his personal property exemption against the collection of a certain debt; *Held*, that such agreement is not binding upon him.
2. In such case the contract is executory and a levy and sale by the sheriff of any portion of his personal property exemption in no way effects the title of the defendant thereto.
3. In such case the Court will not compel the defendant to a specific performance of his contract, but will leave the plaintiff to his action for damages for its breach.

(*Williams* v. *Howard*, 3 Mur. 74; *Austin* v. *Gillaspie*, 1 Jones Eq. 261, cited and approved.)

CASE AGREED, heard at Spring Term, 1877, of WILSON Superior Court, before *Moore, J.*

The case is sufficiently stated by Mr. Justice FAIRCLOTH in delivering the opinion of this Court.

His Honor held that the waiver in the note was binding upon the defendant, and that at the time of the levy by the Sheriff on the property of defendant, he was estopped from claiming his personal property exemption. Judgment for plaintiff. Appeal by defendant.

*Messrs. Connor & Woodard*, for plaintiff.
*Messrs. Kenan & Murray*, for defendant.

FAIRCLOTH, J.   The agreed case states the following facts: The defendant made the following written agreement with the plaintiffs:

"WILSON, N. C., July 4th, 1876.

One day after date, for value received, I promise to pay Branch & Co. or order $49.09, with interest from January 1st, 1876, at 8 per cent.   I hereby agree that I will not claim any homestead or personal property exemptions on any final process issued for the collection of this note, and expressly waive the same.   Witness my hand and seal.

WILEY TOMLINSON.   [SEAL.]

Witness, J. F. FARMER."

The plaintiffs had a judgment on this instrument, issued an execution to the Sheriff, who sold defendant's horse thereunder, and plaintiffs purchased it and bring this suit to recover the same.   The defendant, at the time of the levy, claimed his personal property exemption which was not allowed him.   Did the defendant waive his right to his personal property exemption, is the question presented, and we are of opinion that he did not.

The Constitution, Art. X, exempts from sale under execution a homestead for the benefit of every resident of the State, and after the death of the owner thereof, for the wife or children during her widowhood or their minority.   It also provides the *only* mode of disposing of the same,—namely, by a deed of the husband and wife and her privy examination duly taken.

It also exempts $500 worth of the personal property of every resident of the State from sale under execution, and the Legislature (Bat. Rev. ch. 55, § 10,) has given the wife or children a right to have the same laid off, if he fails to do so before his death, and the Constitution and Legislature

both are silent as to the mode of disposing of such exempted property.

These provisions manifestly disclose the settled policy of the State to secure a home and the means of support to each one of its resident citizens, which the Courts must recognize and sustain.

It may be assumed that the defendant, as he could sell the exempted property at any time, or mortgage it, could waive his right at the time of the levy, and that a sale then made by the Sheriff would pass the absolute title to the purchaser; but an agreement beforehand to do so, being merely an executory agreement, in no way affects the title which remains in the defendant until a sale. nor does it prevent him from disregarding his contract if he chooses to do so, and leave the plaintiffs to their action for damages. It is an agreement with the plaintiffs, and not with the Sheriff, whose duties are prescribed by law.

It is urged that the defendant should be compelled to perform his agreement specifically. This remedy is not a matter of absolute right in the parties, but is one resting in the sound discretion of the Court.

An agreement even for the purchase of land must be certain, just and fair in all its parts, impartial for the plaintiff and not oppressive to the defendant, before the aid of a Court of Equity can be invoked to enforce it; but when the contract is fit for the intervention of the Court, a decree of performance will follow as a matter of course. Whereas in the case of a contract for the sale of personalty, it will not be decreed specifically except in certain cases for peculiar reasons. This is the settled rule and it does not rest upon any distinction between real and personal property, but upon the ground, that in the former case, damages at law will not afford an adequate remedy, because lands have a peculiar and special value, some being more valuable and more convenient to the purchaser than others. Whereas in the latter

case, damages calculated at the market value afford a remedy as full and complete as the delivery of the articles to the purchaser would be, because like articles can be easily purchased with the money recovered. One horse or one ton of iron has no peculiar value over another of the same kind.

In some cases, however, the Court will enforce contracts of the latter kind, as in the case of an heir-loom, a favorite picture, a portrait or other family relics, in favor of members of the family; because these articles have something above their market value, called *pretium affectionis*. In the case of *Williams* v. *Howard*, 3 Mur. 74, the contract for a favorite slave was ordered to be executed, Chief Justice TAYLOR saying, that "for a faithful family slave, endeared by a long course of service or early associations, no damage can compensate; for there is no standard by which the price of affection can be adjusted, and no scale to graduate the feelings of the heart."

The same order was made in *Austin* v. *Gillaspie*, 1 Jones Eq., 261, on a contract for shares in a railroad not yet completed, on the ground of a trust; and notably, that there is a difference between government stock in England, which may be bought readily in market at a well known value, and shares in a railroad company taken for the purpose of constructing the same, the value of which shares could not well be estimated in damages.

It will be observed that in our case there is no description of property, no agreement to sell or make title to anything; so that specific performance is out of the case.

The agreement is to waive a right in contravention of State policy, which agreement this Court cannot undertake to enforce. We find that the same conclusion in regard to the supposed waiver has been adopted in Kentucky. *Maxley* v. *Ragan*, 10 Bush., 156.

There is error.

PER CURIAM.                              Judgment reversed.