## KENNETT v. McKAY.

1. HUSBAND AND WIFE—ANTENUPTIAL AGREEMENTS—PUBLIC POLICY.
   Antenuptial agreements are not necessarily contrary to public
   policy.

2. SAME—ANTENUPTIAL AGREEMENTS—CONSIDERATION.
   Marriage alone is a sufficient consideration for an antenuptial
   agreement.

3. SAME—CONSTRUCTION OF ANTENUPTIAL AGREEMENT.
   Unambiguous antenuptial agreement, made 2 days before divorced
   parties were remarried, which contained nothing restricting its
   effectiveness to a future separation or divorce between the
   parties, *held*, controlling as to plaintiff wife's property rights
   upon death of husband, less than 6 weeks later, leaving a will
   in which no provision was made for plaintiff.

Appeal from Gratiot; Davis (Morris K.), J., presiding. Submitted January 9, 1953. (Docket No. 52, Calendar No. 45,630.) Decided March 10, 1953.

Bill by Emily Ellen Kennett against Bozena R. McKay and another, trustees and executrices of estate of Vernon P. Kennett, deceased, to construe and hold for naught an antenuptial agreement. Bill dismissed after hearing. Plaintiff appeals. Affirmed.

*W. Newton Hawkins,* for plaintiff.

*Curry & Curry,* for defendants.

REFERENCES FOR POINTS IN HEADNOTES

[1] 26 Am Jur, Husband and Wife § 275.
[2] 26 Am Jur, Husband and Wife § 277.
[3] 26 Am Jur, Husband and Wife § 282.

BOYLES, J. In this case the bill of complaint was filed to construe or hold for naught certain provisions in an antenuptial agreement entered into by the plaintiff and one Vernon P. Kennett, in contemplation of their remarriage after a former divorce. The circuit judge, after issue had been joined and a hearing held, dismissed the bill of complaint and the plaintiff appeals. Vernon P. Kennett, deceased, is represented in this litigation by the executrices and trustees of his estate, who were made defendants.

Plaintiff and Vernon P. Kennett were married the first time in 1932 and divorced in 1948. On April 5, 1950, they entered into the antenuptial agreement here in question in contemplation of their remarriage, and were remarried 2 days later. Vernon P. Kennett died testate May 15, 1950, and his will was duly admitted to probate. It had been executed September 21, 1948, while their divorce case was pending after their separation in 1948, and before decree. In his will he left his considerable estate to trustees, to use the income for the benefit of the 3 children of these parties during minority, with the principal to be distributed to them in equal shares when each reached 21 years of age. Plaintiff was not mentioned in the will. The decree of divorce, which was entered December 6, 1948, *inter alia*, required Vernon P. Kennett to transfer a certain automobile to the plaintiff, to pay her $287.36 each month until 114 monthly payments had been made, a total of $32,760; to pay $50 per month for the support of each child, and to procure and deed to the plaintiff a residence to cost between $8,000 and $10,000 for the use of herself and their minor children. The decree otherwise terminated all rights of the plaintiff. Its provisions become of some importance in view of the plaintiff's claim as to the meaning of the antenuptial agreement later entered into, before their remarriage.

The nub of the controversy between the parties in this litigation concerns the time when certain provisions in the antenuptial agreement should be considered to have taken effect. The plaintiff claims that the agreement was made in contemplation of a future separation or divorce between the parties after their remarriage, and that it was intended to reinstate the provisions of the decree of divorce in the event of such future separation; that it was not intended to take effect in any way upon the death of Vernon P. Kennett while the parties were still living together as husband and wife. The result of such a construction would be that the plaintiff would still be entitled to share in his estate notwithstanding the antenuptial agreement, by electing to disregard the will. She claims the right of an election to disregard his will and to have her share in his estate as his surviving spouse. On the contrary, the defendants claim that by its express terms the antenuptial agreement definitely provides for the rights of the plaintiff at his death. Incidentally, under the agreement plaintiff receives $10,000 in cash, and also all unpaid monthly payments as provided for in the decree, about $27,500.

Unless the agreement is ambiguous, it controls. There is no claim of fraud, lack of knowledge or consent, mental incapacity, or undue influence. Plaintiff's only other claims—lack of consideration, and that the agreement is contrary to public policy—have been disposed of by our previous decisions. In addition to the actual benefits which plaintiff derives from the agreement, marriage alone is a sufficient consideration for an antenuptial agreement. *Hockenberry* v. *Donovan*, 170 Mich 370; *Richard* v. *Detroit Trust Co.*, 269 Mich 411. See, also, *Lamb* v. *Lamb*, 192 Mich 466.

Certain provisions in the antenuptial agreement applicable to the question here involved are as fol-

lows: (Emphasis has been added, in certain pertinent particulars.)

"That whereas, a marriage has been agreed upon and is intended to be duly had and solemnized between Vernon P. Kennett and the said Emily Ellen Kennett; * * * and whereas it is the intention of the said party of the second part by this indenture to bar her dower interest as the wife *or widow* of said first party in and to all such real estate, land, messuages, tenements, and hereditaments and to empower and authorize the said first party at any time during the existence of the coverture between the parties, *or at his death, his heirs, executors or administrators* to sell, dispose of, assign or convey any and all of said land, tenements, messuages, and hereditaments aforesaid, and to make and execute, a good and sufficient deed therefor independent of and without the consent or privity of the said party of the second part; and also to bar the dower interest of the said second party as the wife *or widow* of the said party of the first part in and to all property that he may become seised of and not owned by him at the time of their marriage, and to authorize the conveyance thereof in the same manner as real estate now owned and possessed by him; and whereas, it is the intention of said second party to waive as well all her homestead rights or interests in and to any of the said property now owned by said first party, or that may come into his possession and he become seised of during the period of coverture *or as the widow* of said first party; and whereas, it is also the intention of said second party to waive all her rights, title and interest either as the wife of said first party *or as his widow* in and to any and all personal property that he may own at the time of their said marriage or at any time during the coverture *or at the time of his death.*

"That whereas the parties hereto have been recently, and on December 6, 1948, divorced from each other, and all property rights between them

have been adjusted and incorporated into said decree of divorce, including custody of children, alimony and property division and settlement, and whereas at this time all matters incorporated into said decree of divorce are now in force and effect, and have been carried out and performed by each party thereto, including the payment of 17 payments of alimony of $287.36, being a total of $4,885.12, to this date, and also the conveyance in accordance with the terms of said decree by the first party herein to the second party of a house and lot in Alma of the agreed value of $10,000, which said house and lot are now the property of second party herein. That according to the decree of divorce there is now owing by the first party to the second party 97 payments of alimony amounting to $27,873.92.

"Now therefore it is agreed between the parties hereto that conveyance will be at once made by the second party to the first party by quitclaim deed of the house and lot and premises in Alma, Michigan above referred to, and the second party also fully and completely releases said first party from all future payments of alimony as provided in said decree of divorce, except in case the parties hereto separate again hereafter, *or first party dies,* then and in that case the party of the first part agrees that all payments of said alimony that would by the terms of said decree of divorce fall due and become payable subsequent to the date of said latter separation *or death of first party* shall become again owing and payable by the first party to the second party in the same manner as if the contemplated marriage of the parties had never taken place. It being understood and this agreement is that all payments of alimony provided to be paid in said decree of divorce are waived so long as the parties shall live together after the marriage herein contemplated. And the first party in addition thereto shall in case of divorce *or at his death* his estate shall pay to the second party the sum of $10,000 in cash, one third thereof each year for 3 years thereafter, the

first payment to be made within 3 months from the date of said divorce *or death,* it being the intention and agreement of the parties that this provision and the other provisions of this paragraph are made for the purpose of restoring to the second party all of her remaining rights under the decree of divorce in case of separation of the parties after the marriage herein contemplated.

"The said party of the second part does hereby and for the consideration hereinbefore expressed waive and agree to waive all her rights of dower which shall or may vest in her by reason of her marriage with the said first party or as his wife *or widow.*"

In additional agreements entered into on April 5, 1950, before their remarriage, the parties agreed that the antenuptial contract should end at the expiration of 15 years, and also added the following:

"It being the intention of the said second party by this instrument to bar any and all rights of dower or of homestead rights in and to all of the estate of whatsoever nature, lands, tenements, hereditaments and messuages which the said first party now is or shall hereafter become seised of, also to convey and waive all her rights and title in and to any and all personal property now in the possession of said first party or which may be in his possession at any time during his life *or at his death,* both as the wife *or widow* of said first party. And the said second party does hereby further agree that in case she shall survive the said first party she will accept in lieu of her dower or homestead interests in and to all of the lands and tenements, messuages, and hereditaments of said first party, and also any and all property of which said first party shall or may become seised between the time of said marriage *and his said death,* and also in lieu of all personal property of which he may now be possessed or shall be *at the time of*

*his death,* any devise or bequest which said first party may see fit to make for her, said second party, by will or otherwise, if he so elects.

"So as to clear up any ambiguity in this contract or agreement, it is hereinabove and hereby agreed mutually between the parties hereto that the said second party is to have no interest in any of the property of the said first party whether real estate, personal estate, *statutory estate, as widow or heir, or dower or otherwise, except such as is provided in this agreement* or which the first party may voluntarily and of his own free will and accord make for her during his lifetime."

The controlling provisions of the agreement have been quoted at some length. We find nothing in any part of the entire antenuptial agreement which may be considered as injecting into it the provision now claimed by the plaintiff that it was made only in contemplation of a future separation or divorce between the parties. It repeatedly emphasizes what should be the rights of the plaintiff in the event of his death. Nor is there any indication that it was intended to reinstate the provisions of the earlier decree of divorce in the event of the death of Vernon P. Kennett while the parties were still living together. We are constrained to hold that the agreement is not ambiguous, that there was no other agreement, and that it means what it says.

Affirmed. Costs to appellees.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred.