972 So.2d 850 (2007)
Deborah CHAMES, et al., Petitioners,
v.
Henry DeMAYO, Respondent.
Henry DeMayo, Petitioner,
v.
Deborah Chames, et al., Respondents.
Nos. SC06-1671, SC06-2187.
Supreme Court of Florida.
December 20, 2007.
*851 Jonathan A. Heller of Heller and Chames, P.A., and Jay M. Levy, Miami, FL, for Petitioners/Respondents.
Sophie DeMayo, Miami, FL, for Respondent/Petitioner.
Robert W. Goldman of Goldman, Felcoski, and Stone, PA., Naples, FL, and John W. Little, III of Brigham and Moore, LLP, West Palm Beach, FL, on behalf of Real Property Probate and Trust Law *852 Section of The Florida Bar; Louis F. Hubener, Acting Solicitor General, Lynn C. Hearn, Deputy Solicitor General and Jenna L. Reynolds, Assistant Attorney General, Tallahassee, FL, on behalf of Bill McCollum, Attorney General; and Paul Steven Singerman, Ilyse M. Home, and Paul A. Avron of Berger Singerman, PA., Miami, FL, as Amici Curiae.
CANTERO, J.
Like many states, Florida protects homeowners' residences from forced sale except in limited circumstances. The exemption is contained in article X, section 4(a)(1) of the Florida Constitution. While the exemption can be waived in a mortgage, for over a hundred years we have held that it cannot be waived in an unsecured agreement. See Carter's Adm'rs v. Carter, 20 Fla. 558 (1884);. Sherbill v. Miller Mfg. Co., 89 So.2d 28, 31 (Fla.1956). In these consolidated cases, an unsecured creditor (an attorney who is owed fees under a retainer agreement) asks us to recede from our precedent based on three subsequent developments: an amendment to our constitution; a purported national trend approving such waivers; and our recent holdings that other constitutional rights can be waived. In short, we do not interpret the constitutional amendment as approving waivers of the homestead exemption; we discern no trend approving such waivers (and in fact have discovered the opposite); and permitting a waiver of the homestead exemption in a mortgage but not in an unsecured agreement is consistent with our cases allowing waivers of constitutional rights, but requiring them to be knowing, intelligent, and voluntary. We therefore decline to recede from our prior decisions.

I. FACTS
Henry DeMayo, who is divorced, sought to modify his child support obligations and abate his alimony payments. For that purpose, he retained Deborah Chames and her law firm, Heller & Chames, PA. (collectively "Chames"). He signed a sixpage, single-spaced retainer agreement that contained the following provision on page four:
It is specifically agreed that Heller and Chames, P.A. shall have and is hereby granted all general, possessory and retaining liens and all equitable, special and attorney's charging liens upon the client's interests in any and all real and personal property within the jurisdiction of the court for any balance due, owing and unpaid as well as a lien in any recovery whether by settlement or trial; and such lien or liens shall be superior to any other lien subsequent to the date hereof and that the client hereby knowingly, Voluntarily and intelligently waives his rights to assert his homestead exemption in the event a charging lien is obtained to secure the balance of attorney's fees and costs.

DeMayo v. Chames, 934 So.2d 548, 549 (Fla. 3d DCA 2006) (emphasis added). Chames ultimately withdrew from representation, and obtained a charging lien and final judgment against DeMayo for $33,206.76. The trial court applied the lien to DeMayo's home.
DeMayo appealed to the Third District Court of Appeal. He argued, among other things, that his waiver of the homestead exemption in the retainer agreement was invalid, and therefore the trial court could not impose the lien on his home. In a plurality opinion, the district court reversed on that issue, finding the waiver invalid, but it affirmed "in all other respects." See DeMayo, 934 So.2d at 551. Two judges (a majority of the panel) concurred in the result, recognizing our precedent but noting that they would hold otherwise if "writing on a blank slate." Id. at 555 (Shepherd, J., concurring). The concurring *853 opinion certified a question of great public importance. Id.[1] Both parties sought review in this Court, and we accepted jurisdiction. See art. V, § 3(b)(4), Fla. Const.; Chames v. DeMayo, 937 So.2d 122 (Fla.2006) (accepting jurisdiction); DeMayo v. Chames, 948 So.2d 758 (Fla.2007) (accepting jurisdiction). We rephrase the question as follows: Should this Court recede from longstanding precedent holding that the Florida Constitution's exemption from forced sale of a homestead cannot be waived? For reasons we explain below, we answer the question "no" and approve the result below. We continue to hold that a waiver of the homestead exemption in an unsecured agreement is unenforceable.[2]

II. ANALYSIS
The homestead exemption has been enshrined in our state constitution for over a hundred years. The exemption itself reads as follows:
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
(1) a homestead . . .
Art. X, § 4(a), Fla. Const. As we recognized in Snyder v. Davis, 699 So.2d 999 (Fla.1997):
The homestead provision has been characterized as "our legal chameleon." Our constitution protects Florida homesteads in three distinct ways. First, a clause . . . provides homesteads with an exemption from taxes. Second, the homestead provision protects the homestead from forced sale by creditors. Third, the homestead, provision delineates the restrictions a homestead owner faces when attempting to alienate or devise the homestead property.
Id. at 1001-02 (footnotes omitted). We also have explained the reason behind the exemption: "The public policy furthered by a homestead exemption is to `promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune and the demands of creditors *854 who have given credit under such law.'" McKean v. Warburton, 919 So.2d 341, 344 (Fla.2005) (quoting Pub. Health & Trust v. Lopez, 531 So.2d 946, 948 (Fla.1988)).
Of course, by its own terms the exemption does not apply to mortgaged property. See art. X, § 4(c), Fla. Const. ("The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage. . . ."); see also Howard v. Calhoun, 155 Fla. 689, 21 So.2d 361, 362 (1945) ("We have long recognized that property exempt under Article X of the Constitution, whether real property or personal property, can be sold or mortgaged by the owner . . . just as any other property."). The question here is whether a homeowner can waive the exemption without formally mortgaging the propertythat is, in promissory notes, retainer agreements, or other purportedly unsecured instruments.
We first addressed this issueor one like itin Carter. Specifically, the question was "whether an agreement . . . to waive all benefit and right of [exemption] is valid in view of the policy of the exemption laws." Carter, 20 Fla. at 563. There, the decedent Carter had signed a promissory note waiving the benefit of all exemption laws. Id. at 560. Invoking a similar provision that exempts $1,000 in personal property, see art. X, §, 4(a)(2), Fla. Const., Carter's heirs sued to require the estate's administrators to set aside $1,000 of personal property as exempt. Id. at 559. We surveyed the law in other jurisdictions and held that
[i]n view of the recognized policy of the States in enacting exemption laws and of the practically universal concurrence of the authorities on the identical question, our conclusion is that the "waiver" of the benefit and protection of the exemption laws contained in this note is not valid to defeat a claim of exemption.
Id. at 570. We specifically rejected the argument that the waiver should be permitted because the same result could be achieved through a mortgage:
When a man executes a mortgage or bill of sale upon certain specified property, the very nature of the transaction implies the exercise of discretion and the contemplation of inevitable consequences. Such contracts are, therefore, upheld as well in respect to real as to personal property. We have in several cases held that a sale under a mortgage is not a forced sale because it was a sale under consent given under seal and irrevocably conveying an interest in the thing described. . . . Few men would mortgage their household goods and their children's clothes to a hard creditor with the inevitable result brought vividly to their understanding. . . .
Id. at 570.
Over 70 years later, we addressed the issue again in Sherbill, 89 So.2d 28. There, the debtors executed a note waiving "the benefit of their homestead exemption as to this debt." Id. at 29. We noted that "[n]o policy of this State is more strongly expressed in the constitution, laws and decisions of this State than the policy of our exemption laws." Sherbill, 89 So.2d at 31. Relying on Carter, we reiterated that the "waiver was contrary to the policy of the exemption laws of this State." Sherbill, 89 So.2d at 31.
Since our decisions in Carter and Sherbill, we have recognized some types of waivers. For example, article X, section 4(c) prohibits a devise of the homestead "if the owner is survived by spouse or minor child." In City National Bank of Florida v. Tescher, 578 So.2d 701, 703 (Fla.1991), we found valid a spouse's waiver of that restriction. See also § 732.702(1), Fla. Stat. (2006) ("The rights of a surviving spouse to . . . homestead *855 . . . may be waived, wholly or partly, before or after marriage, by a written contract, agreement, or waiver, signed by the waiving party in the presence of two subscribing witnesses."); Hartwell v. Blasingame, 564 So.2d 543, 545 (Fla. 2d DCA 1990) ("[W]e see no reason for the state to prohibit [the surviving spouse] from validly waiving her homestead rights at the inception of the marital relationship which invoked those rights."), approved, 584 So.2d 6 (Fla.1991); In re Amendment to the Rules Regulating the Fla. BarRule 4-1.509(4)(B) of the Rules of Prof'l Conduct, 939 So.2d 1032, 1038 (Fla.2006) ("Florida's highly valued constitutional homestead protection is subject to waiver."). However, we have repeatedly refused to find an exception to the protection from forced sale outside of those expressly stated. See, e.g., Havoco of Am., Ltd. v. Hill, 790 So.2d 1018, 1030 (Fla.2001) ("[A] homestead acquired by a debtor with the specific intent to hinder, delay, or defraud creditors is not excepted from the protections of article X, section 4."); Tramel v. Stewart, 697 So.2d 821, 824 (Fla.1997) (finding no exception in article X, section 4 for a violation of the Forfeiture Act); Butterworth v. Caggiano, 605 So.2d 56, 60 (Fla.1992) ("[F]orfeitures are not excluded from the homestead exemption because they are not mentioned, either expressly or by reasonable implication, in the three exceptions that are expressly stated."); Olesky v. Nicholas, 82 So.2d 510, 513 (Fla.1955) ("[T]he Florida constitutional exemption of homesteads protects the homestead against every type of claim and judgment except those specifically mentioned in the constitutional provision itself. . . . ").
Having discussed our precedent, we next consider whether we should recede from it. We do so recognizing that the doctrine of stare decisis "counsels us to follow our precedents unless there has been `a significant change in circumstances after the adoption of the legal rule, or . . . an error in legal analysis.'" Rotemi Realty Inc. v. Act Realty Co., Inc., 911 So.2d 1181, 1188 (Fla.2005) (quoting Dorsey v. State, 868 So.2d 1192, 1199 (Fla.2003)).
Chames essentially proposes three grounds for receding from Carter and Sherbill: (A) the 1984 amendment to article X, section 4, which substituted "a natural person" for "the head of family," changed the purpose of the homestead exemption from, one protecting the family home into a personal right that may be waived; (B) most states now permit waivers; and (C) permitting waiver is consistent with other cases holding that various constitutional rights may be waived. We address each argument in turn.

A. The Amendment to Article X, Section 4
Chames primarily argues that a 1985 amendment to article X, section 4, which replaced the phrase "the head of a family" with "a natural person," changed the purpose of the' homestead exemption from one protecting the family into a personal right that may be waived. We can find no such intent.
Before the amendment, the homestead exemption was limited to persons who qualified as "the head of a family." See art. X, § 4(a), Fla. Const. (1972). This required a showing of either "(1) a legal duty to support which arises out of a family relationship, or (2) continuing communal living by at least two individuals under such circumstances that one is regarded as in charge." Holden v. Estate of Gardner, 420 So.2d 1082, 1083 (Fla.1982). In 1984, Florida voters approved an amendment changing the phrase "the head of a family" to "a natural person." We addressed the amendment in Lopez, where we noted that "the homestead exemption formerly only enjoyed by a head of a family can now be enjoyed by any natural person." 531 So.2d at 951. We recognized that the *856 amendment "expanded the class of persons who can take advantage of the homestead provision and its protections." Id. at 948.
We find no indication, however, that in expanding the homestead protection, Florida voters also intended to alter its fundamental purpose. The ballot summary on which the people voted stated:
EXEMPTION OF HOMESTEAD AND PERSONAL PROPERTY FROM FORCED SALEProvides that the exemption of a homestead and of personal property to the value of $1,000 from forced sale and certain liens shall extend to any natural person, not just the head of a family.
Fla. HJR 40 (1983) at 2 (proposed amendment to art. X, § 4(a)). We cannot agree that in expanding the homestead exemption from protecting families to protecting all individuals, the voters also intended to approve a waiver of that right.
Finally, the conclusion that this amendment changed the purpose of the homestead protection to one solely for the benefit of the homeowner is inconsistent with cases recognizing, even after the amendment, that the exemption's purpose is to protect the family, see Havoco, 790 So.2d at 1020, and it would ignore the State's interest in protecting the home, see Lopez, 531 So.2d at 948. Cf. Slatcoff v. Dezen, 76 So.2d 792, 794 (Fla.1954) ("Appellant concentrates throughout upon the interest of debtor and creditor exclusively. What she overlooks is the interest of the State in its exemption laws, to the end that owners of exempt property and their families shall not be reduced to absolute destitution, thus becoming a charge upon the public.").
For these reasons, we find the amendment to the homestead exemption a slim reed on which to recede from 123 years of precedent.

B. Waiver in Other Jurisdictions
As another basis for receding from Carter and Sherbill, Chames argues that there has been a "shift in the position of Florida's sister states on this issue." If this were true, it would at least furnish a valid reason for reconsidering our precedent. We have been willing to recede from precedent when it conflicted with the law in a majority of states. See, e.g., Fridovich v. Fridovich, 598 So.2d 65, 69 (Fla.1992) ("We thus hold, as a majority of the other states have held in this context, that defamatory statements voluntarily made by private individuals to the police or the state's attorney prior to the institution of criminal charges are presumptively qualifiedly privileged. We therefore recede from Ange [v. State, 98 Fla. 538, 123 So. 916 (1929)] and Robertson [v. Industrial Insurance Co., 75 So.2d 198 (Fla.1954) ] to the extent they are inconsistent with our ruling today."); State v. Soto, 423 So.2d 362, 363 (Fla.1982) (answering in the negative a certified question as to "the continued desirability of according to the Uniform Interstate Extradition Act . . . a more restrictive construction, as reflected by the decision of Ennist v. Baden, [158 Fla. 141, 28 So.2d 160 (1946)], than is accorded the Act by other courts of last resort," and receding from. Ennist). As we explain; however, because of the differing constitutional and statutory provisions involved, any such trend on this issue is difficult to discern, and to the extent it can be discerned, the trend appears to go in the opposite direction.
Given the variety of state homestead provisions, comparisons to other jurisdictions are difficult and generally of limited value. See Snyder, 699 So.2d at 1002 ("[O]ur case law surrounding the homestead provision has its own contours and legal principles. As a result, it is not susceptible to comparisons with similar provisions in other jurisdictions."); see also Ryan P. Rivera, State Homestead Exemptions and Their Effect on Federal *857 Bankruptcy Laws, 39 Real Prop. Prob. & Tr. J. 71, 97 (2004) ("In the late nineteenth century no two state homestead exemptions were the same. Today, state homestead exemptions have become even more diverse, as states have afforded disparate treatment to issues such as waiver, abandonment, and noncontiguous property in determining the extent of the debtor's rights to the homestead exemption.") (footnote omitted). Nonetheless, our review fails to reveal a shift toward permitting a waiver of the homestead or personal property exemptions in an executory contractthat is, "a contract . . . for which there remains something still to be done on both sides." Black's Law Dictionary 344 (8th ed.2004); see also 40 Am Jur.2d Homestead§ 189 (2007) ("In the absence of express constitutional or statutory provision for contractual waiver of the homestead exemption, such waivers have been generally held void for reasons of public policy.").
We need not exhaustively analyze the plethora of disparate state constitutional and statutory homestead exemptions. Suffice it to say that the majority of jurisdictions that have addressed the issue (whether by constitution, statute, or judicial opinion) do not permit a general waiver of homestead or personal property exemptions in an executory contract.[3] Some states permit waiver in limited circumstances.[4] Relatively few clearly permit a general waiver of the homestead or personal *858 property exemptions in an executory contract.[5]
We recognize that several of the out-of-state cases cited in the Third District's concurring opinion contain broad statements that homestead exemptions are personal rights that may be waived. See DeMayo, 934 So.2d at 552-53 (Shepherd, J., concurring). However, many of these cases do not involve waiver in the manner attempted here. Instead, they address waiver in a mortgage or deed of trust;[6] waiver of the surviving spouse's homestead rights;[7] or waiver in some other context.[8] As we have noted, Florida, too, allows a *859 waiver of the exemption in a mortgage and a waiver of the surviving spouse's homestead rights. Therefore, to that extent, Florida law is consistent with those cases. To the extent those cases discuss waiver in myriad other contexts, however, they do not inform our analysis.
We also disagree that four of the six jurisdictions that prohibited this type of waiver when we decided Carter now permit it. In Carter, we surveyed the law in eight states, noting that two (Alabama and Pennsylvania) permitted waiver, but six (Illinois, Iowa, Kentucky, Louisiana, New York, and North Carolina) did not. See Carter, 20 Fla. at 563-69. Of the six jurisdictions that prohibited a waiver back then, only Louisiana permits it now. See La. Const. art. XII, § 9. ("The legislature shall provide by law for exemptions from seizure and sale, as well as waivers of and exclusions from such exemptions."); La. Rev.Stat. Ann. § 20:1(D) (Supp.2007) ("Any person entitled to a homestead may waive same, in whole or in part, by signing a written waiver thereof. . . . The waiver may be either general or specific and shall have effect from the time of recording."). It appears that Illinois has limited its decision in Recht, 82 Ill. at 148 (holding that waivers in an executory contract are invalid) to waivers by heads of family, but has not overruled it. See Powell v. Daily, 163 Ill. 646, 45 N.E. 414, 415 (1896) (distinguishing a waiver by a head of family from a waiver by an "unmarried man"). The remaining four jurisdictions that prohibited a waiver thenIowa, Kentucky, New York, and North Carolinacontinue to do so.[9] Moreover, Pennsylvania, which at *860 that time permitted a waiver, now prohibits it. See 42 Pa. Cons.Stat. Ann. § 8122 (West 2007); Mayhugh, 331 A.2d at 457 n. 7.
For these reasons, we are not persuaded that the law in other jurisdictions has so substantially changed as to warrant receding from our longstanding precedent. Instead, Florida remains in line with the majority of jurisdictions in prohibiting a waiver of homestead and personal property exemptions in the manner attempted here.

C. Waiver of Other Constitutional Rights
Finally, Chames argues that waiver of the homestead exemption should be permitted because we have permitted waiver of other constitutional rights. This would be the most compelling reason for receding from Carter and Sherbill, for if indeed we have held that other constitutional rights can be waived, it would seem anomalous to prohibit waiver of the homestead exemption. We do not agree, however, that such an inconsistency exists.
It is true that we recently noted that "most personal constitutional rights may be waived." In re Rule 4-1.509(4)(B), 939 So.2d at 1038; see also In re Shambow's Estate, 153 Fla. 762, 15 So.2d 837, 837 (1943) ("It is fundamental that constitutional rights which are personal may be waived."). However, an individual cannot waive a right designed to protect both the individual and the public. See, e.g., Coastal Caisson Drill Co. v. Am. Cas. Co. of Reading, Pa., 523 So.2d 791, 793 (Fla. 2d DCA 1988), approved, 542 So.2d 957 (Fla.1989); Asbury Arms Dev. Corp. v. Fla. Dep't of Bus. Regulations, 456 So.2d 1291, 1293 (Fla. 2d DCA 1984). We have repeatedly recognized that the homestead exemption protects not only the debtor, but also the debtor's family and the State. See Havoco, 790 So.2d at 1020; Snyder, 699 So.2d at 1002; Caggiano, 605 So.2d at 60; Lopez, 531 So.2d at 948; Slatcolt; 76 So.2d at 794; Hill, 84 So. at 192. Therefore, the right to the homestead exemption is not purely personal as some others are.
We recognize that since Carter, a trend has developed toward permitting the waiver of constitutional rights, especially rights given to criminal defendants. See, e.g., Faretta v. California, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (permitting waiver of the right to assistance of counsel under the Sixth and Fourteenth Amendments); Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (permitting waiver of the right to counsel and right to remain silent under the Fifth Amendment); Larzelere v. State, 676 So.2d 394, 403 (Fla.1996) (recognizing that a defendant may waive the right to conflict-free counsel); Tescher, 578 So.2d at 703 (finding valid an antenuptial waiver of surviving spouse's homestead rights); Melvin v. State, 645 So.2d 448, 449 (Fla.1994) (finding that a defendant who knowingly enters into a plea agreement waives the constitutional protection against double jeopardy in exchange for reduced charges); cf. re Rule 4-1.5(f)(4)(B), 939 So.2d at 1038 (citing examples of constitutional rights that may be waived, but declining to determine whether the rights granted to medical malpractice claimants under article I, section 26 may be waived).[10] We have also *861 emphasized, however, that such waivers must be made knowingly, voluntarily, and intelligently. See, e.g., Sanchez-Velasco State, 702 So.2d 224, 227 (Fla.1997) ("A waiver of collateral counsel and proceedings must be knowing, intelligent, and voluntary."); Larzelere, 676 So.2d at 403 (finding the trial court "met the burden of assuring that appellant's waiver was made voluntarily, knowingly, and intelligently"); State v. Upton, 658 So.2d 86, 87 (Fla.1995) ("An effective waiver of a constitutional right must be knowing, voluntary, and intelligent."). For example, when a criminal defendant executes a plea agreement, the judge must confirm that the defendant is aware of the right to a jury trial and voluntarily waives it. See Fla. R.Crim. P. 3.172(c)(3). The Florida Rules of Criminal Procedure prescribe a detailed colloquy judges must recite to confirm that the defendant knows the consequences of pleading guilty instead of going to trial. See Fla. R.Crim. P. 3.172. Similarly, when a defendant chooses to represent himself and waives the right to counsel, the judge must confirm that the defendant understands the consequences of such actions. E.g., Lamarca v. State, 931 So.2d 838, 854-55 (Fla.2006) ("[T]rial courts are required to make the defendant `aware of the dangers and disadvantages of self-representation . . .'" (quoting Hernandez-Alberto v. State, 889 So.2d 721, 729 (Fla.2004))). In the civil context, we recently allowed civil plaintiffs to waive their right to no less than 70% of the first $250,000 in damages received and 90% of damages in excess of $250,000. See In re Rule 4-1.5(9(4)(B), 939 So.2d at 1040. In doing so, however, we approved a form that attorneys must provide to inform the client about the constitutional right and the possible consequences of waiving it. The client must initial six separate paragraphs explaining the rights involved. See R. Regulating Fla. Bar 4-1.5(f)(4)(B), and attached form. In contrast, the waiver in this case was contained on page four of a six-page, single-spaced contract, and at the end of a 118-word sentence. This is precisely the evil that our cases have sought to avoid.
Carter and Sherbill do not contradict the trend toward allowing waivers of constitutional rights. To the contrary, they are consistent with the cases within this same trend holding that such waivers must be knowing, intelligent, and voluntary. To be clear: Carter and Sherbill do not prohibit a waiver of the homestead exemption; they simply require that such waivers be accomplished as the Florida Constitution prescribes: by "mortgage, sale, or gift," see art. X, § 4(c), Fla. Const. They prohibit only a general waiver in an otherwise unsecured instrument. Requiring that a waiver of the homestead exemption be made in the context of a mortgage assures that the waiver is made knowingly, intelligently, and voluntarily. In obtaining a mortgage, a homeowner is well aware that if the payments are not made, the home may be foreclosed upon. As we noted in Carter, "the very nature of the transaction implies the exercise of discretion and the contemplation of inevitable consequences." Carter, 20 Fla. at 570. A mortgage assures that the waiver of the homestead exemption, like the waiver of other rights, is made with eyes wide opennot inadvertently, deep in the entrails *862 of a retainer agreement. Those who truly wish to waive their homestead exemptionincluding DeMayocan do so.

III. CONCLUSION
We agree with Judge Wells's statement in her dissent to the original opinion issued below that if we were to recede from Carter and Sherbill,
[T]he waiver of the homestead exemption will become an everyday part of contract language for everything from the hiring of counsel to purchasing cellular telephone services. The average citizen, who is of course charged with reading the contracts he or she signs . . . often fails to read or understand boilerplate language detailed in consumer purchase contracts, language which the contracts themselves often permit to be modified upon no more than notification in a monthly statement or bill. . . . [S]uch consumers may lose their homes because of a "voluntary divestiture" of their homestead rights for nothing more than failure to pay a telephone bill. This inevitably will result in whittling away this century old constitutional exemption until it becomes little more than a distant memory.
DeMayo v. Chames, 30 Fla. L. Weekly D2692, D2695-96 (Fla. 3d DCA Nov.30, 2005) (Wells, J., dissenting).[11]
Although 123 years have passed since we decided Carter, and 51 years have passed since Sherbill, the relevant circumstances have not significantly changed. See, e.g., Rotemi Realty, Inc., 911 So.2d at 1188 (recognizing that prior precedent should be followed absent a significant change in circumstances or analytical error). Nor have Carter and Sherbill proven unworkable. See, e.g., State v. Green, 944 So.2d 208, 217 (Fla.2006) ("Stare decisis yields `when an established rule of law has proven unacceptable or unworkable in practice.'" (quoting Allstate Indent. Co. v. Ruiz, 899 So.2d 1121, 1131 (Fla.2005))). Our ultimate concern in Carter was that a waiver of the exemption from forced sale in an unsecured agreement would "by the mere scratch of a pen" render the exemption "nugatory." 20 Fla. at 570. The passage of time has not changed that concern. We therefore apply the doctrine of stare decisis and reaffirm our holdings in Carter and Sherbill. The decision below is approved.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, and BELL, JJ., concur.
NOTES
[1] The district court certified the following question:

Whether, in light of subsequent precedent in Florida and other jurisdictions, and the textual changes made by the people of the State of Florida in Article X, Section 4 of the Florida Constitution in the general election of November 1984, the holding in Carter's Adm'rs v. Carter, 20 Ha. 558 (Fla. 1884), followed in Sherbill v. Miller Manufacturing Co., 89 So.2d 28, 31 (Fla.1956), that a waiver of the benefit and protection of the exemption found in Article X, Section 4(A) of the Florida Constitution is unenforceable against the claim of a general creditor, should be overruled?
DeMayo, 934 So.2d at 555 (Shepherd, J., concurring).
[2] DeMayo raises several claims (in both cases) that the district court did not specifically address and that are outside the scope of the certified question. We decline to address them. See McEnderfer v. Keefe, 921 So.2d 597, 597 n. 1 (Fla.2006) (declining to reach issues "that were either not directly addressed by the district court . . . or were merely implied or cursory, at best"); Major League Baseball v. Morsani, 790 So.2d 1071, 1080 n. 26 (Fla.2001) (declining to address a claim outside the scope of the certified question in recognition that "[a]s a rule, we eschew addressing a claim that was not first subjected to the crucible of the jurisdictional process set forth in article V, section 3, Florida Constitution"); State v. Perry, 687 So.2d 831, 831 (Fla.1997) (declining to review a cross-appeal issue unrelated to the certified question).
[3] These include Alaska: Alaska Stat. § 09.38.105 (2006); California: Cal.Civ.Proc. Code § 703.040 (West 1987); Indus. Loan & Inv. Co. of San Francisco v. Superior Court of Calif, 189 Cal. 546, 209 P. 360, 361 (1922); Colorado: Weaver v. Lynch, 79 Colo. 537, 246 P. 789, 790 (1926); Connecticut: Taxis-Ohr's Fuel, Inc. v. Trio Mkt'rs, Inc., 40 Conn. L. Rptr. 203, 205 (Conn.Super.Ct.2005); Florida: Sherbill, 89 So.2d at 31; Carter, 20 Fla. at 571; Indiana: Maloney v. Newton, 85 Ind. 565, 566 (Ind.1882); Iowa: Curtis v. O'Brien, 20 Iowa 376, 377 (1866); In re Hebert, 301 B.R. 19, 23-24 (Bankr.N.D.Iowa 2003); Kansas: Celco, Inc. of Am. v. Davis Van Lines, Inc., 226 Kan. 366, 598 P.2d 188, 191 (1979); Kentucky: Moxley v. Ragan, 73 Ky. (10 Bush) 156, 158-59 (1873); Mississippi: Teague v. Weeks, 89 Miss. 360, 42 So. 172, 172 (1906); Montana: Mont.Code Ann. § 25-13-601 (2007); Anaconda Fed. Credit Union, No. 4401 v. West, 157 Mont. 175, 483 P.2d 909, 912 (1971); New York: Kneettle v. Newcomb, 22 N.Y. 249, 250 (1860); North Carolina: N.C. Gen.Stat. § 1C-1601(c) (2005); Howell v. Roberson, 197 N.C. 572, 150 S.B. 32, 33 (1929); Branch v. Tomlinson, 77 N.C. 388, 390 (1877); North Dakota: United States v. Neff, No. 4:05-cv-128, 2007 WL 776532, at *16 (O.N.O. March 12, 2007); Ohio: Ohio Rev. Code Ann. § 2329.661(B) (West 2004); Dennis v. Smith, 125 Ohio St. 120, 180 N.E. 638, 639 (1932); Pennsylvania: 42 Pa. Cons.Stat. Ann. § 8122 (West 2007); Mayhugh v. Coon, 460 Pa. 128, 331 A.2d 452, 457 (1975); Tennessee: Tenn.Code Ann. § 26-2-301(d) (Supp.2007); Sherwin-Williams Co. v. Morris, 25 Tenn.App. 272, 156 S.W.2d 350, 352-53 (1941); Utah: Utah Code Ann. § 78-23-11 (2002); Bunker v. Coons, 21 Utah 164, 60 P. 549, 552 (1900); Washington: Slyfield v. Willard, 43 Wash. 179, 86 P. 392, 394 (1906); West Virginia: W. Va.Code Ann. § 38-9-6 (2005); Wisconsin: Wis. Stat. Ann. § 815.18(6)(a) (West 2007); Maxwell v. Reed, 7 Wis. 582, 593 (1859); and Wyoming: Lingle State Bank v. Podolak, 740 P.2d 392, 396 (Wyo.1987), superseded by 1987 Wyo. Sess. Laws ch. 198, as recognized in McManaman v. McManaman, 53 P.3d 103 (Wyo.2002). Cf. Meyer Bros. Drug Co. v. Bybee, 179 Mo. 354, 78 S.W. 579, 585 (1904) (finding a financial statement failing to list exempt property did not' waive homestead exemption); Farmers' & Merchants' Bank v. Hoffman, 96 N.W. 1044, 1048 (Neb.1903) (recognizing, in dicta, that "an executory contract to waive exemptions connected with the contract creating the debt" is "void as against public policy").
[4] See, e.g., Illinois: Recht v. Kelly, 82 Ill. 147, 148 (1876) ("That such a waiver, where, the same is attempted to be made by an executory contract, is ineffectual, and will not be enforced, is definitely settled by the decisions of this and other courts."); Powell v. Daily, 163 Ill, 646, 45 N.B. 414, 415 (1896) (distinguishing Recht where the debtor was an "unmarried man"); Maryland: compare Lawrence v. Commercial Banking Corp., 165 Md. 559, 169 A. 69, 70-71 (1933) (holding that the execution of a note waiving the right to exemption of wages from attachment was a personal right), with Md.Code Ann., Cts. & Jud. Proc. § 11-504(d) (Supp.2007) (providing that the general exemptions and the retirement plan exemption may not be waived), and In re Gordon, 199 B.R. 7, 11 (D.Md.1996) ("[T]he Legislature has created some exemptions that are susceptible of waiver and some that are not."); and Minnesota: Argonaut Ins. Co. v. Cooper, 261 N.W.2d 743, 744-45 (Minn.1978) (finding a waiver in a general indemnity agreement enforceable where there was an "unequivocal intention" to waive as demonstrated by the debtor's submission of a financial statement specifically listing the property; distinguishing Benning v. Hessler, 144 Minn, 403, 175 N.W. 682, 683 (1920) (finding a waiver in a confession of judgment that does not refer to any real property unenforceable)).
[5] These include Alabama: Ala. Const. art. X, § 210; Ala.Code. § 6-10-120 (2005); Broadway v. Household Fin. Corp., 351 So.2d 1373, 1375 (Ala.Civ.App.1977); Arizona: Ariz .Rev. Stat. Ann. § 33-1104(A)(1) (2007); Delaware: Del.Code Ann. tit. 10, § 4912 (1999); Georgia: Ga.Code Ann. § 44-13-40 (2002); Louisiana: La. Const. art. XII, § 9; La.Rev.Stat. Ann. § 20:1(D) (Supp.2007); New Mexico: First State Bank v. Muzio, 100 N.M. 98, 666 P.2d 777, 779 (1983), overruled on other grounds by Huntington Nat'l Bank v. Sproul, 116 N.M. 254, 861 P.2d 935, 944-45 (1993); and Virginia: Va.Code Ann. § 34-22 (2005).
[6] E.g., Rogers v. Great Am. Fed. Say. & Loan Ass'n, 304 Ark. 143, 801 S.W.2d 36 (1990); Hawkeye Bank & Trust Co. v. Michel, 373 N.W.2d 127 (Iowa 1985); Red River State Bank v. Reierson, 533 N.W.2d 683 (N.D.1995). The concurrence below also cites two statutes related to debts secured by the homestead. See Tenn.Code Ann. § 26-2-301(c) (Supp. 2007) ("The homestead exemption shall not operate . . . against any debt secured by the homestead when the exemption has been waived by written contract.") (emphasis added); Wash. Rev:Code § 6.13.080(2)(a) (West Supp.2007) ("The homestead exemption is not available against execution or forced sale in satisfaction of judgment obtained: . . . (2) On debts secured (a) by security agreements describing as collateral the property that is claimed as a homestead. . . .") (emphasis added). In Tennessee, waiver in a promissory note is prohibited by statute. See Tenn. Code Ann. § 26-2-301(d) (Supp.2007) ("A deed, installment deed, mortgage, deed of trust; or any other deed or instrument . . . conveying property in which there may be a homestead exemption, duly executed, conveys the property, free of homestead exemption, but the homestead exemption may not be waived in a note, other instrument evidencing debt, or any other instrument not conveying property in which homestead exemption may be claimed.") (emphasis added). The Washington Supreme Court found a statute unconstitutional to the extent it purported to allow the head of family to waive exemptions by executory contract. Slyfield, 86 P. at 394 ("In so far as it purports to justify an executory contract of the head of a family, whereby he agrees to waive all of his exemptions, we think it is repugnant.").
[7] E.g., Weaver v. Weaver, 109 Ill. 225, 234 (1883) (antenuptial agreement); Kennett v. McKay, 336 Mich. 28, 57 N.W.2d 316, 319 (1953) (antenuptial, agreement); Shearon v. Goff, 95 Neb. 417, 145 N.W. 855, 858-59, (1914) (finding a waiver of the right to claim a greater share of the homestead where the surviving spouse "fixed the extent of homestead which he cho[se] to assert, and asked] that the balance be distributed among the heirs of the decedent"); In re Estate of Wallace, 648 P.2d 828, 834 (Okla.1982) (waiver by abandonment); In re Estate of Moore, 210 Or. 23, 307 P.2d 483, 485 (1957) (antenuptial agreement); Schutterle v. Schutterle, 260 N.W.2d 341, 354 (S.D.1977) (antenuptial agreement), superseded on other grounds by S.D. Codified Laws § 19-13-3 (2004), as recognized in State v. Catch the Bear, 352 N.W.2d 640, 646 (S.I).1984); Ferguson v. Ferguson, 111 S.W.3d 589, 598 (Tex.App.2003) (recognizing that the surviving spouse's homestead rights may be waived, but finding an agreed judgment did not waive homestead rights); In re Dalton's Estate, 109 Utah 503, 167 P.2d 690, 692 (1946) (recognizing that the surviving spouse's homestead rights may be waived, but finding an agreement between the surviving spouse and the decedent's daughter did not waive homestead rights).
[8] E.g., Schuler v. Wallace, 61 Haw. 590, 607 P.2d 411, 414 (1980) (finding the failure to assert the right to claim an exemption results in a waiver); Tibbetts v. Tibbetts, 113 Me. 201, 93 A. 178, 180 (1915) (finding a waiver of a contingent interest in a home devised by will by joining in a petition for partition); McMillan v. Aru, 773 So.2d 355, 360 (Miss.Ct.App. 2000) (finding any procedural defect in estimating the value of the homestead surplus waived); I.H. Kent Co. v. Miller, 77 Nev. 471, 366 P.2d 520, 522 (1961) (finding a creditor could not compel the debtor to claim the homestead exemption); Cameron v. McDonald, 216 N.C. 712, 6 S.E.2d 497, 499 (1940) ("Having omitted to assert his right to a homestead in the particular land, when the matter was in issue, we think the plaintiff is now estopped to relitigate the question.").
[9] Iowa: Curtis, 20 Iowa at 377 ("[A] person contracting a debt cannot by a cotemporaneous and simple waiver of the benefit of the exemption laws, entitle the creditor, in case of failure to pay, to levy his execution against defendant's objection upon exempt property."); see also In re Hebert, 301 H.R. at 23 (recognizing that a waiver of the homestead exemption pursuant to Iowa Code section 561.21 must "at a minimum" contain a stipulation that the homestead will be liable for the debt and also must refer to specific homestead property); Kentucky: Moxley, 73 Ky. at 158 ("If such a contract is upheld, the exemption law of the state would be virtually obsolete. . . ."); New York: See Kneettle, 22 N.Y. at 250 ("A few words contained in any note or obligation would operate to change the law between those parties, and so far disappoint the intentions of the legislature."); see also State v. Avco Fin. Serv. of New York Inc., 50 N.Y.2d 383, 429 N.Y.S.2d 181, 406 `N.E.2d 1075, 1077 (1980) ("[W]hile contractual waivers of a debtor's statutory exemptions are usually held to be void, the law has not forbidden a debtor to execute a mortgage upon the property so protected and thus create a lien which may be foreclosed. . . .") (citations omitted); North Carolina: N.C. Gen.Stat. § 1C-1601(c) (2005) (providing that exemptions cannot be waived except by (1) a transfer of property; (2) written waiver after judgment and approved by the clerk or district court judge; or (3) failure to assert the exemption after notice); Howell, 150 S.E. at 33 (noting that a general waiver of the homestead exemption in a promissory note "is contrary to the law in this jurisdiction"); Branch, 77 N.C. at 391 (finding an agreement to waive exemptions in a promissory note "in contravention of State policy").
[10] Chames argues that "[t]his Court only recently addressed whether the homestead exemption could be waived" in In re Rule 4-1.5(D(4)(B), 939 So.2d at 1038. However, we did not decide the issue presented here in that case. Although we did state that "Florida's highly valued constitutional homestead protection is subject to waiver," id., we were referring not to the exemption from forced sale but to the restriction in article X, section 4(c) on devising homestead property (as reflected by the citation to Hartwell). See art. X, § 4(c), Fla. Const. ("The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child.").
[11] In the Third District's first opinion issued in this case, the majority concluded that waiver was permissible. Judge Wells dissented with a written opinion. DeMayo v. Chames, 30 Fla. L. Weekly D2692, D2694 (Fla. 3d DCA Nov.30, 2005). The district court withdrew that opinion on its own motion.