MAY, J.
In this consolidated appeal, the former wife challenges a final judgment of dissolution and a final judgment adjudicating an attorney’s charging lien. She raises twelve issues. We reverse on a single *1136 issue, affirm all others, and remand the ease to the trial court for further proceedings.
The former husband and wife were married in Texas in May 2000. On the day of the ceremony, they entered into a Prenuptial Agreement. Although the former wife claimed that she did not understand the purpose and implications of the Agreement, trial testimony revealed that the couple had discussed it well in advance of its execution.
The Agreement provided for the protection of the “separate property” the parties each had at the time of signing and declared in exhibits attached to the Agreement. In that attachment, the former husband reported an Ohio home valued at $195,000, with a $164,000 mortgage balance.
Regarding property acquired during the marriage, the Agreement provided that the manner in which it “is titled during the marriage shall control such property’s ownership and distribution in the event of’ a dissolution of marriage. “Such property shall be held as provided in the instrument conveying or evidencing title to such property.” “All income, rents, profits, interest, dividends, stock splits, gains, and appreciation in value, relating to any such separate property shall also be deemed separate property.” (Emphasis added). The Agreement further provided that any “funds deposited in either party’s separate bank accounts shall be deemed that party’s separate property.”
One asset considered for equitable distribution was a $75,000 loan the former husband made to his brother-in-law. The money derived from the sale of the marital home in Maryland, which was titled in the former husband’s name only. It had been purchased with a $21,000 down payment derived from the sale of the former husband’s pre-marital home in Ohio. When the Maryland home was sold, the proceeds were deposited into a checking account belonging solely to the former husband.
The former husband argued that the money was a pre-marital asset. The former wife argued that the loan was a marital asset. In the final judgment, the trial court awarded the right to collect the $75,000 loan to the former husband as a pre-marital asset. In her sixth issue, the former wife argues that the trial court erred in that award. We disagree.
“Decisions of the trial court concerning the equitable distribution of marital assets are reviewed under an abuse of discretion standard.” Pomeranz v. Pomeranz, 901 So.2d 895, 896 (Fla. 4th DCA 2005) (citing Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980)).
Section 61.075(5)(b)l., Florida Statutes (2007), defines non-marital assets and liabilities. They include “[ajssets acquired and liabilities incurred by either party pri- or to the marriage, and assets acquired and liabilities incurred in exchange for such assets and liabilities....” Id. Section 61.075(5)(a)2. provides “that increases in value of a nonmarital asset that are attributable to marital labor or funds are subject to equitable distribution.” Doig v. Doig, 787 So.2d 100, 103 (Fla. 2d DCA 2001). The former husband bore the burden of establishing that the $75,000 loan was not a marital asset. Gladstone v. Gladstone, 733 So.2d 1090, 1092 (Fla. 4th DCA 1999) (citations omitted).
Prior to the marriage, the former husband owned a home in Ohio. He used approximately $21,000 of the proceeds from the sale of that home as a down payment on the Maryland marital home. The Maryland home was titled in the former husband’s name only. It was sold in August 2005, resulting in approximately $218,000 in proceeds. Those funds were *1137 deposited in the former husband’s individual bank account.
Pursuant to Florida statutes, it would initially appear that the $75,000 loan, which was made from the proceeds of the sale of the marital home, would be marital assets, either because the Maryland home was a marital asset or because the appreciation in the home during the marriage resulted from marital labor or funds. See, e.g., § 61.075(5)(a)2. & (5)(b)l. However, the Agreement in this case directly addressed this issue from multiple perspectives.
First, the Agreement specifically provided for the parties to maintain separate property and the former husband listed the Ohio property in an attachment to the Agreement. Second, the Agreement provided that any property titled in an individual name belonged to that person. The Maryland home was titled only in the former husband’s name. Third, the Agreement provided that “[a]ll income, rents, profits, interest, dividends, stock splits, gains, and appreciation in value, relating to any such separate property shall also be deemed separate property.” Thus, any appreciation in the Maryland home remained separate property. And last, the Agreement provided that any monies placed in an account in an individual’s name belonged to that individual. When the Maryland property was sold, the proceeds were placed in an account in the former husband’s name only.
For these reasons, the outcome of this issue is not controlled by either Valdes v. Valdes, 894 So.2d 264 (Fla. 3d DCA 2004) (because a prenuptial agreement failed to address the right to enhanced value of non-marital assets, that value was subject to equitable distribution) or Irwin v. Irwin, 857 So.2d 247, 248 (Fla. 2d DCA 2003) (holding pre-nuptial agreement’s failure to address husband’s income during the marriage did not waive wife’s claim to appreciation of assets purchased with that income). We therefore affirm the trial court’s award of the $75,000 loan proceeds to the husband.
In issue eleven, the former wife argues that the trial court erred in allowing her former attorney’s charging lien to be executed against her homestead property. We agree.
In the final judgment adjudicating the former attorney’s charging lien, the trial court ordered that “Michael Dyer, Esquire/Law Firm may file and execute this Final Judgment against the marital home.” In doing so, the trial court erred. Recently, our supreme court reiterated the preeminence of Florida’s homestead exemption. Chames v. DeMayo, 972 So.2d 850 (Fla.2007). “The homestead exemption has been enshrined in our state constitution for over a hundred years.” Id. at 853.
The public policy furthered by a homestead exemption is to “promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune and the demands of creditors who have given credit under such law.”
McKean v. Warburton, 919 So.2d 341, 344 (Fla.2005) (quoting Pub. Health Trust of Dade County v. Lopez, 531 So.2d 946, 948 (Fla.1988)). For these long-held policy reasons, the trial court’s final judgment on the charging lien allowing execution against the marital home is reversed.

Affirmed in part, reversed in part and remanded.

STEVENSON and GROSS, JJ, concur.