DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ALL INSURANCE RESTORATION SERVICES, INC.**
a/a/o **EDWIN MASABANDA** and **MILENA MASABANDA,**
Appellant,

v.

**AMERICAN INTEGRITY INSURANCE COMPANY OF FLORIDA,**
Appellee.

No. 4D21-89

[March 23, 2022]

Appeal from the County Court for the Nineteenth Judicial Circuit, St. Lucie County; Daryl Isenhower, Judge; L.T. Case Nos. 2020-SC-000245 and 2020-AP-000022.

Erin M. Berger and Melissa A. Giasi of Giasi Law, P.A., Tampa, for appellant.

Scot E. Samis of Traub Lieberman Straus & Shrewsberry LLP, St. Petersburg, for appellee.

FORST, J.

Appellant All Insurance Restoration Services, Inc. appeals the trial court's dismissal of its complaint against American Integrity Insurance Company of Florida ("Insurer"), in an action involving the interplay between homestead property rights and the assignment of post-loss insurance benefits. The trial court found that assigned insurance benefits are "imbued with the same [homestead protections] as the property itself," thereby requiring compliance with sections 689.01 and 689.111, Florida Statutes (2019), for proper sale, alienation or devise.

Appellant raises several arguments on appeal. Finding merit in Appellant's arguments that sections 689.01's and 689.111's homestead protections are inapplicable to an assignment of post-loss insurance benefits, we reverse.

**Background**

In early 2019, Edwin and Milena Masabanda's ("the Insureds") real property sustained damage from a covered peril. To protect the property from further damage, the Insureds hired Appellant to perform water mitigation services. As payment, the Insureds assigned Appellant their policy benefits pursuant to a "Work Authorization, Direct Payment Request, & Limited Assignment of Benefits" ("AOB").

In accordance with the AOB, Appellant provided Insurer "with itemized invoices detailing the amount owed for the work [on the Insureds'] property." However, Insurer refused to pay the amount due and owing under the AOB. Consequently, Appellant filed a one-count complaint against Insurer for breach of contract.

Insurer filed a motion to dismiss, arguing that the AOB was both an invalid assignment and an improper conveyance of homestead property. Specifically, Insurer cited *Quiroga v. Citizens Property Insurance Corp.*, 34 So. 3d 101 (Fla. 3d DCA 2010), arguing "insurance proceeds for homestead property are constitutionally protected to the same extent as the property and cannot be divested by a homeowner through an unsecured agreement." Insurer further contended, "[d]espite the lack of a secured agreement, the alleged [AOB was] not a proper conveyance of homestead property" because it did not comply with sections 689.01 and 689.111, Florida Statutes (2019).

In response, Appellant filed an amended memorandum of law. According to Appellant, *Quiroga* was distinguishable "because it involved a charging lien imposed on proceeds from an insurance policy [and] not, like here, a voluntary transfer of benefits on the part of the [I]nsured[s]." Additionally, Appellant contended that sections 689.01 and 689.111 had "nothing to do with the assignment of benefits provided to [Appellant] by the Insureds . . . ."

Following a hearing on Insurer's motion to dismiss, the trial court entered an order granting the motion. Citing to *Quiroga* and to *JD Restoration Inc. v. Universal Property & Casualty Insurance Co.*, 245 So. 3d 809 (Fla. 4th DCA 2018)—a nonprecedential citation opinion involving an identical issue—the court found that the assigned insurance proceeds were "imbued with the same insulation as the property itself enjoys." The trial court stated that such insulation could be "stripped or avoided only by proper procedure to create a secured interest in the insurance proceeds in favor of [Appellant]." And, because the Insureds did not execute the AOB in the manner which sections 689.01 and 689.111 prescribe, the trial court found dismissal appropriate. This appeal followed.

2

**Analysis**

"The standard of review of orders granting motions to dismiss is *de novo.*" *Scott v. Progressive Express Ins. Co.*, 932 So. 2d 475, 477 (Fla. 4th DCA 2006). Likewise, the standard of review of a trial court's interpretation of constitutional provisions or statutes is *de novo. Furst v. Rebholdz as Tr. of Rod Rebholz Revocable Tr.*, 302 So. 3d 423, 428 (Fla. 2d DCA 2020).

*A. Homestead Application*

1. *General Law*

The Florida Constitution's Article X, section 4, contains certain protections on the sale, devise, or alienation of homestead property. Under article X, section 4(a):

> *There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon,* except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
>
> (1) *a homestead . . . .*

Art. X, § 4(a), Fla. Const. (emphasis added). Moreover, under article X, section 4(c):

> The homestead shall not be subject to devise if the owner is survived by spouse or minor child, except the homestead may be devised to the owner's spouse if there be no minor child. *The owner of homestead real estate, joined by the spouse if married, may alienate the homestead by mortgage, sale or gift and, if married, may by deed transfer the title to an estate by the entirety with the spouse.* If the owner or spouse is incompetent, the method of alienation or encumbrance shall be as provided by law.

Art. X, § 4(c), Fla. Const. (emphasis added).

"In the event a homestead is damaged . . . the proceeds of any insurance recovery are imbued" with the same constitutional protections as the

homestead property itself. *Quiroga v. Citizens Prop. Ins. Corp.*, 34 So. 3d 101, 102 (Fla. 3d DCA 2010). Thus, Article X, Section 4's protections on the sale, devise, or alienation of homestead property apply to insurance proceeds. *See id.*; *Orange Brevard Plumbing & Heating Co. v. La Croix*, 137 So. 2d 201, 203–04 (Fla. 1962). However, recent opinions have clarified that these constitutional homestead protections have no bearing on the *assignment* of any post-loss insurance proceeds or benefits. *See Speed Dry, Inc. v. Anchor Prop. & Cas. Ins. Co.*, 302 So. 3d 463, 466–67 (Fla. 5th DCA 2020), *rev. denied*, SC20-1382, 2020 WL 5793576 (Fla. Sept. 29, 2020); *Citrus Contracting LLC v. Liberty Mut. Fire Ins. Co.*, No. 6:19-cv-2192-Orl-28EJK, 2020 WL 364581, at *2 (M.D. Fla. Jan. 22, 2020).

### 2. *Quiroga*

In *Quiroga*, a law firm secured insurance proceeds "for the benefit of its client and policy insured . . . ." 34 So. 3d at 101. The client then terminated the law firm's representation, seeking "to shield himself from any responsibility to compensate his counsel by claiming the insurance proceeds [were] exempt homestead property, not subject to attachment by means of a charging lien." *Id.* The trial court agreed with the client, denying the law firm's motion to impose a charging lien on the homeowner's insurance proceeds. *See id.*

On appeal, the Third District noted that neither party disputed the property was constitutionally exempt homestead property. *Id.* at 101–02. However, because insurance proceeds are imbued with the same homestead protections as the property itself, the court held that the client "did not and, as a matter of public policy in this State, [could not] through an unsecured agreement . . . enter into an enforceable contract to divest himself" of his Article X, Section 4(a) protections.

### 3. *Citrus Contracting* and *Speed Dry*

In *Citrus Contracting*, the Middle District of Florida considered an insurer's argument that assigned post-loss insurance benefits are "homestead property that falls within Article X, § 4(a) of the Florida Constitution such that the proceeds of the Policy retain the same homestead protections as the Property itself." *Citrus Contracting*, 2020 WL 364581, at *2 (footnote omitted). Noting that "[n]either the Supreme Court of Florida nor any Florida appellate court has explicitly extended Florida law" as the insurer argued, the court denied the insurer's motion to dismiss. *Id.*

4

Subsequently, in *Speed Dry*, the Fifth District considered whether Article X, Section 4(c) "prevents the owner of homestead real property from assigning post-loss insurance benefits to a third-party contractor." *Speed Dry*, 302 So. 3d at 464. Utilizing the supremacy-of-text principle, the court determined that, for purposes of Article X, Section 4(c), the term "alienate" referred to the transfer of *real* property. *Id.* at 466. In line with that construction, the court stated that "[a]n assignment of post-loss insurance benefits does not transfer title of real property . . . [but is instead] an assignment of contract rights that places a third party in the shoes of the homeowner and in privity with the insurance company." *Id.* Thus, the court held that the assignment of benefits at issue conveyed "no interest in the homestead property" and was not prohibited by Article X, Section 4(c).[1] *Id.* at 466–67.

4. *Application of <u>Quiroga</u>, <u>Citrus Contracting</u>, and <u>Speed Dry</u> to the Instant Case*

Despite the above-noted persuasive authority suggesting that homestead protections are irrelevant to the assignment of post-loss insurance benefits under Article X, Insurer argues that *Quiroga* applies to the case at bar, and that this court should follow its nonprecedential citation opinion in *J.D. Restoration*—a citation opinion which, as stated earlier, involved an identical issue and which in fact relied upon *Quiroga* in support.[2]

However, *Quiroga* did not involve an assignment of benefits. Therefore, *Quiroga*'s application to the instant case is tenuous at best. Indeed, both *Citrus Contracting* and *Speed Dry* specifically distinguished *Quiroga* when determining that the constitutional homestead protections did not apply.

---

[1] In *Landmark Construction Inc. of Central Florida v. Anchor Property & Casualty Insurance Co.*, 325 So. 3d 153 (Fla. 5th DCA 2020), the Fifth District reinforced *Speed Dry*'s holding, certifying the following question as one of great public importance: "DOES ARTICLE X, SECTION 4(c) OF THE FLORIDA CONSTITUTION ALLOW THE OWNER OF HOMESTEAD REAL PROPERTY, JOINED BY THE SPOUSE, IF MARRIED, TO ASSIGN POST-LOSS INSURANCE BENEFITS TO A THIRD-PARTY CONTRACTOR CONTRACTED TO MAKE REPAIRS TO THE HOMESTEAD PROPERTY?" *Id.* at 154. The supreme court denied review. SC20-1428, 2020 WL 6128206 (Fla. Oct. 19, 2020).
[2] Insurer also suggests that this Court follow *One Call Property Services, Inc.* v. *St. Johns Insurance Co.*, 183 So. 3d 364 (Fla. 4th DCA 2016). That case, too, involved an identical issue, but resulted in a nonprecedential *per curiam* affirmance opinion.

5

In *Citrus Contracting*, the Middle District of Florida noted that *Quiroga* "involved a charging lien that attorneys sought to place on insurance proceeds," stating that it was "not persuaded that *Quiroga* is properly extended to assignments" of post-loss insurance benefits. *Citrus Contracting*, 2020 WL 364581, at *2. Moreover, in *Speed Dry*, the Fifth District further distinguished *Quiroga*, arguing the case stood for the proposition that "a homesteader cannot waive, through an unsecured agreement, the homestead exemption set forth in article X, section 4(a)." *Id.* at 466–67. As the appellant-assignee in *Speed Dry* had not tried to lien the insured's home or force a sale on the insured's homestead, the court held that Article X, Section 4(a)—and therefore *Quiroga*—was not implicated. *See id.*

Here, we agree with the rationale of both *Citrus Contracting* and *Speed Dry*. As it pertains to Article X, Section 4(a), no forced sale or potential lien occurred. Thus, like both *Citrus Contracting* and *Speed Dry*, we distinguish *Quiroga* on such basis. Further, with respect to Article X, Section 4(c), we find compelling *Speed Dry*'s assertion that "[a]n assignment of post-loss insurance benefits . . . is an assignment of contract rights that places a third party in the shoes of the homeowner and in privity with the insurance company [and] . . . conveys no interest in . . . homestead property." 302 So. 3d at 466.

"The general purpose of the homestead provision in the Florida Constitution, at least historically, has been to protect the family and the family home." *In re Est. of Morrow*, 611 So. 2d 80, 81 (Fla. 2d DCA 1992). "The public policy furthered by a homestead exemption is to promote the stability and welfare of the state by securing to the householder a home, so that the homeowner and his or her heirs may live beyond the reach of financial misfortune and the demands of creditors who have given credit under such law." *Chames v. DeMayo*, 972 So. 2d 850, 853–54 (Fla. 2007) (internal quotation marks omitted) (quoting *McKean v. Warburton*, 919 So. 2d 341, 344 (Fla. 2005)).

Limiting the voluntary assignment of post-loss insurance benefits, as Insurer requests, does not protect the family and family home. Nor does such limitation further public policy, as in any assignment of post-loss insurance benefits, the assignment "places a third party in the shoes of the homeowner and in privity with the insurance company." *Speed Dry*, 302 So. 3d at 466. Under the ensuing assignment, "the assignor no longer has a right to enforce the interest because the assignee has obtained 'all rights to the things assigned.'" *Cont'l Cas. Co. v. Ryan Inc. E.*, 974 So. 2d 368, 376 (Fla. 2008) (quoting *Price v. RLI Ins. Co.*, 914 So. 2d 1010, 1013–14 (Fla. 5th DCA 2005)). Thus, the homeowner is necessarily not subject

to the "demands of creditors." *Chames*, 972 So. 2d at 853. Consequently then, Article X, Section 4(c) is not implicated when dealing with the assignment of post-loss insurance benefits.

To the extent our nonprecedential citation opinion in *J.D. Restoration*, or our nonprecedential *per curiam* affirmance in *One Call* are at odds with this holding, we note that neither this Court nor the trial court had the benefit of the *Citrus Contracting* or *Speed Dry* decisions. Accordingly, because we find *Speed Dry* particularly persuasive, and because the former decisions are nonprecedential, we decline to follow those former decisions.

*B. Sections 689.01 and 689.111*

Having determined that homestead exemptions have no application to the assignment of post-loss insurance benefits, we next address the applicability of sections 689.01 and 689.111, Florida Statutes (2019).

Section 689.01 provides in pertinent part:

> No estate or interest of freehold, or for a of term of more than 1 year, or any uncertain interest of, in, or out of any messuages, lands, tenements, or hereditaments shall be created, made, granted, transferred, or released in any manner other than by instrument in writing, signed in the presence of two subscribing witnesses by the party creating, making, granting, conveying, transferring, or releasing such estate, interest, or term of more than 1 year, or by the party's lawfully authorized agent, unless by will and testament, or other testamentary appointment, duly made according to law . . . .

§ 689.01(1), Fla. Stat. (2019). "[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984) (quoting *A.R. Douglass, Inc. v. McRainey*, 137 So. 157, 159 (Fla. 1931)).

Here, section 689.01's plain language indicates that the statute is connected to the transfer of real property, which—as noted in *Speed Dry*—is not part of an assignment of post-loss insurance benefits. *Speed Dry*,

302 So. 3d at 466. In fact, messuages,[3] lands, tenements, and hereditaments are all terms associated with real property. While Insurer argues that "hereditaments" extends to legal rights related to real property and could therefore also cover assigned insurance benefits, hereditaments are "[a]ny property that can be inherited; anything that passes by intestacy" or "[r]eal property; land." *Hereditament*, Black's Law Dictionary (11th ed. 2019).

An assignment of insurance rights simply does not implicate a transfer of property by inheritance or intestacy or involve the transfer of real property or land. Thus, section 689.01, by its plain language, is inapplicable to the assignment of post-loss insurance benefits. Further, while a statute's title alone is not determinative, *Fitts v. Furst*, 283 So. 3d 833, 837 (Fla. 2d DCA 2019), section 689.01's title is "How real estate [is] conveyed." § 689.01, Fla. Stat. (2019).

As for section 689.111, both that statute's title and plain language clearly reference a conveyance of *homestead realty*. *See* § 689.111, Fla. Stat. (2019). Because "[a]n assignment of post-loss insurance benefits does not transfer title of real property . . . [but is instead] an assignment of contract rights that places a third party in the shoes of the homeowner and in privity with the insurance company," *Speed Dry*, 302 So. 3d at 466, section 689.111 is inapplicable. Thus, whatever infirmities may or may not have existed with Appellant's compliance with sections 689.01 and 689.111, because the AOB did not involve a transfer of real property or of homestead realty, Appellant was not required to comply with such statutes as part of the assignment of benefits at issue.

## Conclusion

Pursuant to recent persuasive authority, we hold that Article X, Section 4's restrictions on the sale, devise, or alienation of homestead property are not to be treated as impediments to the assignment of post-loss insurance benefits. Because those homestead protections are inapplicable and do not involve a transfer of real property, we further hold that Appellant's purported noncompliance with sections 689.01 and 689.111 was immaterial. Therefore, the trial court erred in granting Insurer's motion to dismiss and in later dismissing the case. Accordingly, we reverse and remand for the entry of an order denying Insurer's motion.

*Reversed and remanded with instructions.*

---

[3] Messuage means "[a] dwelling house together with the curtilage, including any outbuildings." *Messuage*, Black's Law Dictionary (11th ed. 2019).

8

MAY and GERBER, JJ., concur.

*       *       *

*Not final until disposition of timely filed motion for rehearing.*